2020 IL App (2d) 190631
No. 2-19-0631
Opinion filed July 29, 2020

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| PEKIN INSURANCE COMPANY, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 18-MR-1322 |
| | ) | |
| McKEOWN CLASSIC HOMES, INC.; | ) | |
| JEROME McKEOWN; JANET H. HULA, | ) | |
| MICHELLE HULA-MILLER; and ERIC | ) | |
| B. MILLER, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | Honorable |
| (McKeown Classic Homes, Inc., and Jerome | ) | Paul M. Fullerton, |
| McKeown, Defendants-Appellants). | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Presiding Justice Birkett and Justice Schostok concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendants, McKeown Classic Homes, Inc., and Jerome McKeown (collectively, McKeown), appeal the trial court's entry of summary judgment in favor of plaintiff, Pekin Insurance Company (Pekin), finding that Pekin had no duty to defend McKeown in the underlying action. Additionally, McKeown appeals the trial court's denial of its motion to reconsider the grant of summary judgment to Pekin. For the reasons that follow, we affirm the judgment of the trial court.

¶ 2                                  I. BACKGROUND

¶ 3    On April 9, 2018, Janet Hula, Michelle Hula-Miller, and Eric Miller (collectively, claimants) filed the underlying action, a two-count complaint against McKeown alleging breach of contract and conversion stemming from McKeown's work on claimants' property pursuant to a construction agreement.[1] Relevant here, count II (conversion) alleged that, in July 2013, McKeown, "without authority and knowledge of [claimants], took hundreds of planks of knotty pine wood, a Dutch door, a hand sink, four windows and [a] glass door knowingly belonging to the [claimants] without [claimants'] consent." Count II alleged that claimants demanded McKeown return the above items, but it refused to do so. Count II stated that, as a proximate result of McKeown's conversion, claimants suffered $25,000 in damages. Claimants further alleged that McKeown's acts were "willful, wanton, malicious, and oppressive and were undertaken with the intent to defraud" and that they "justify the awarding of punitive damages."

¶ 4    On September 17, 2018, after refusing to accept McKeown's tendered defense to claimants' complaint, Pekin filed a complaint for a declaratory judgment that it had no duty to defend McKeown in the underlying action. Pekin stated that the commercial general liability insurance policy (the policy) it issued to McKeown contained certain exclusions applicable to the claimants' conversion claim. Pekin attached to the complaint a copy of the policy issued to McKeown.

_____

[1] Count I of the underlying complaint alleged breach of contract and listed 191 instances of McKeown's improper construction, poor workmanship, or damage to various parts of the claimants' property. McKeown does not contend in this appeal that Pekin had a duty to defend the allegations contained within count I.

¶ 5    Section I of the policy provides, in relevant part, as follows:

"1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. We may, at our discretion, investigate an 'occurrence' and settle any claim or 'suit' that may result.

***

b. This insurance applies to 'bodily injury' and 'property damage' only if:

(1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the coverage territory[.]' "

The policy defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general or harmful conditions." The policy defined "property damage" as

"a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

¶ 6    On October 24, 2018, McKeown filed an answer to Pekin's complaint for declaratory judgment, contending that the damages sought and the allegations contained in claimants' conversion claim were covered by the policy. On October 26, 2018, McKeown filed a counterclaim

for declaratory judgment in which it contended that the "materials at issue were mistakenly removed by a subcontractor involved in the demolition of the prior home located at the Subject Property." McKeown's counterclaim stated that the "alleged wrongful removal by subcontractor *** of these materials amounts to 'property damage' as claimants have alleged a resulting 'loss of use of that property' as defined by the policy." McKeown further stated that "this loss is a clearly covered 'occurrence' as defined by the policy as the subcontractor's mistake in removing property allegedly belonging to [claimants] was an 'accident.' " Thus, McKeown alleged, Pekin had a duty to defend it in the underlying action.

¶ 7      On January 4, 2019, Pekin filed a motion for summary judgment stating that it had no duty to defend McKeown against claimants' underlying complaint for conversion. Pekin argued in its motion that the conversion claim did not allege an "occurrence" as defined in the policy but, rather, an intentional act to deprive claimants of their own property.

¶ 8      McKeown filed a cross-motion for summary judgment on February 19, 2019, arguing that claimants' conversion claim did not clearly delineate whether McKeown negligently or intentionally converted their property. Thus, according to McKeown's motion, an issue of fact existed as to its potential liability for conversion, and Pekin must defend it under the terms of the policy. Further, McKeown argued that the conversion claim alleged $25,000 in damages that could be considered "property damage" as defined in the policy, as claimants alleged a resulting "loss of use of that property."

¶ 9      To support its position that the allegedly converted items were taken by "mistake" and, thus, as the result of an "occurrence" under the terms of the policy, triggering Pekin's duty to defend, McKeown attached claimants' following answer to an underlying interrogatory:

"Identify each and every communication with McKeown related to McKeown's alleged conversion of the 'hundreds of planks of knotty pine wood, a Dutch door, a hand sink, four windows and a glass door' as you allege in Count II of the Complaint. For each communication identified, state whether the communication was oral or written; the date of the communication; the name and affiliation of each individual involved in the communication; and the content of the communication.

Answer: Regarding Count II of the complaint. Before the existing house on the lot was demoed[,] Eric Miller spent a couple of weekends removing planks of knotty pine wood, a Dutch door, a hand sink, four windows and glass door knobs from the house. We talked to Jerry McKeown about this because the wood was in good condition and we thought that it would be good to use these items in a club house ***. At Jerry McKeown's direction, Eric Miller loaded the items onto an existing playset in the rear of the property and covered the items with a blue tarp. When we were on vacation, [McKeown] had the property demoed. When we viewed the pictures sent by Michele Hula's brother, we noticed the playset was not in any of the pictures. We immediately contacted [McKeown] to find out what happened *** with the items we stored in the playset. [McKeown] informed us that the demo company took those items away along with the playset. He then told us that 'I will build a better clubhouse than I demo[ed]' to assure us that he would take care of this miscommunication that occurred on his watch. At the end of construction, we revisited the clubhouse issue and [McKeown's] stance changed drastically. He started to back pedal on the promise he made to us and refused to build the clubhouse. We ended up having the landscaper *** erect a clubhouse/shed structure in our backyard at our own expense."

¶ 10    On March 22, 2019, claimants, who had been joined as defendants in Pekin's declaratory judgment action, stipulated and agreed to be bound by any judgment. The trial court granted Pekin's motion to voluntarily dismiss claimants pursuant to their stipulation.

¶ 11    On March 26, 2019, the trial court heard arguments from the remaining litigants on their cross-motions for summary judgment. The trial court found that, in their conversion claim, claimants

> "allege intentional conduct, and they allege that once that conduct was brought to McKeown's attention, [he] refused to return [the items]. And there is nothing in here that tells me that there is negligence or an accident. What I have got to go on are the allegations of the complaint. *** There is a refusal to return [items] once they are known. And I go back to the duty to defend in this case is what you are asking the Court to rule on. It rests upon the allegations of the complaint."

The trial court granted Pekin's motion for summary judgment and found that there was no duty to defend McKeown under the terms of the policy.

¶ 12    On April 16, 2019, McKeown filed a motion to reconsider the trial court's March 26, 2019, ruling in favor of Pekin. McKeown argued in its motion that the trial court misapplied the law in granting Pekin's motion, because the underlying complaint's allegations could leave it liable for conversion, potentially covered by the policy. The trial court held a hearing on McKeown's motion to reconsider on June 17, 2019, whereupon it was denied. McKeown timely filed this appeal.

¶ 13                                II. ANALYSIS

¶ 14    In this appeal, McKeown contends that the trial court erred in (1) granting Pekin's motion for summary judgment and finding no duty to defend under the terms of the policy and (2) denying its motion to reconsider. We will address each of McKeown's contentions in turn.

¶ 15 The trial court's grant of summary judgment, based on its finding that Pekin owed no duty to defend in the underlying action, presents a legal question, which we review *de novo*. *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010) (legal issues related to insurance contracts require *de novo* review); *State Farm Mutual Automobile Insurance Co. v. Murphy*, 2019 IL App (2d) 180154, ¶ 21 (we review the trial court's grant of summary judgment *de novo*).

¶ 16 "Summary judgment is proper where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004); see 735 ILCS 5/2-1005(c) (West 2016). A genuine issue of material fact exists when the material facts are disputed or when the material facts are undisputed but reasonable persons might draw different inferences from those undisputed facts. *Carney v. Union Pacific R.R. Co.*, 2016 IL 118984, ¶ 25. "Although summary judgment can aid in the expeditious disposition of a lawsuit, it remains a drastic means of disposing of litigation and, therefore, should be allowed only where the right of the moving party is clear and free from doubt." *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008).

¶ 17 In a declaratory judgment action where the issue is whether the insurer has a duty to defend, a court looks first to the allegations in the underlying complaint and compares those allegations to the relevant provision of the insurance policy. *Wilson*, 237 Ill. 2d at 455; *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 107-08 (1992). An insurer's duty to defend arises when (1) the complaint is brought against an insured and (2) the facts as alleged in the complaint fall, or potentially fall, within the policy's coverage. *Wilson*, 237 Ill. 2d at 455.

¶ 18    When construing an insurance policy, a court's primary objective is to ascertain and give effect to the intentions of the parties as expressed in their insurance contract. *Id.* If the words of the policy are clear and unambiguous, the court must afford them their plain and ordinary meaning. *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 292 (2001); *Outboard Marine,* 154 Ill. 2d at 108. Where ambiguity exists, the policy will be construed strictly against the insurer, who drafted the policy, and liberally in favor of coverage for the insured. *Nicor, Inc. v. Associated Electric & Gas Insurance Services Ltd.*, 223 Ill. 2d 407, 417 (2006).

¶ 19    If the underlying complaint alleges facts within or potentially within policy coverage, the insurer is obligated to defend its insured even if the allegations are groundless, false, or fraudulent. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991). "It is the allegations of the complaint, not the findings of the underlying litigation, that are dispositive of the duty to defend." *Northbrook Property & Casualty Insurance Co. v. Transportation Joint Agreement*, 309 Ill. App. 3d 261, 264 (1999). Courts must determine whether the alleged conduct arguably falls within at least one of the categories of wrongdoing listed in the policy. *Lexmark International, Inc. v. Transportation Insurance Co.*, 327 Ill. App. 3d 128, 135-36 (2001) (citing *La Grange Memorial Hospital v. St. Paul Insurance Co.*, 317 Ill. App. 3d 863, 869 (2000)).

¶ 20    In support of its first contention, McKeown argues that the trial court incorrectly made its finding in favor of Pekin based solely on the allegations in the underlying complaint and without any consideration of the facts plead by McKeown in its counterclaim for declaratory judgment. It directs this court to our supreme court's holding in *Wilson*.

¶ 21    In *Wilson*, the plaintiff in the underlying action filed a lawsuit against Wilson alleging causes of action for assault, battery, and intentional infliction of emotional distress stemming from two separate incidents. *Wilson*, 237 Ill. 2d at 449. Wilson tendered his defense to Pekin, with whom

he had a commercial general liability policy. *Id.* Pekin and another of Wilson's insurers filed a complaint for declaratory judgment, each seeking a finding that it owed no duty to defend Wilson. *Id.* Wilson's policy with Pekin contained an exclusion from coverage for intentional conduct, but the exclusion included an exception for self-defense.

¶ 22    The plaintiff in the underlying suit subsequently filed an amended complaint that added a count of negligence against Wilson. *Id.* at 449-50. Pekin filed an amended complaint for declaratory judgment, again seeking a finding that it owed no duty to defend Wilson in the underlying suit. *Id.* at 451. Wilson filed an answer to the amended complaint in the underlying suit as well as a counterclaim against the underlying plaintiff in which he claimed self-defense and alleged that the underlying plaintiff was the aggressor in one of the subject altercations. *Id.*

¶ 23    Wilson then filed an answer to Pekin's amended complaint for declaratory judgment, denying that Pekin had no duty to defend him in the underlying lawsuit. *Id.* at 452. Pekin filed a motion for judgment on the pleadings, pursuant to section 2-615(e) of the Code of Civil Procedure (735 ILCS 5/2-615(e) (West 2006)), arguing that the underlying amended complaint's added negligence count did not bring the underlying suit within the policy's coverage, because that count merely articulated in negligence terms the allegations of intentional conduct by Wilson. *Wilson,* 237 Ill. 2d at 452. Wilson filed a response to Pekin's motion, arguing that Pekin was aware that he denied any intentional harm to the underlying plaintiff and that the allegations of negligence were sufficient to raise a duty to defend. *Id.* at 453. The trial court granted Pekin's motion and declared that Pekin had no duty to defend Wilson in the underlying suit. *Id.* The appellate court found that the facts alleged in the underlying complaint were inconsistent with allegations of negligence, even though labeled as such. *Id.* at 454. However, the appellate court reversed the trial court's order, holding that, in addition to relying upon the allegations in the underlying complaint to ascertain

Pekin's duty to defend, the trial court could consider whether the allegations that Wilson raised in his counterclaim against the underlying plaintiff triggered the self-defense exception in the policy. *Id.*

¶ 24 In affirming the appellate court's holding, our supreme court concluded that a trial court may look beyond the underlying complaint in order to determine an insurer's duty to defend. *Id.* at 459. Wilson's counterclaim in the underlying suit alleged self-defense and contained detailed allegations of the underlying plaintiff's aggression. *Id.* at 463. Additionally, Wilson's memorandum response to Pekin's motion for judgment on the pleadings in the declaratory judgment action revealed that he had "consistently denied that he improperly harmed or intended to harm" the underlying plaintiff. *Id.* at 464. Our supreme court held that "it was incumbent upon the trial court, for purposes of resolving Pekin's motion for judgment on the pleadings, to consider as admitted all well-pleaded facts set forth in the pleadings of the nonmoving party, and the fair inferences drawn therefrom." *Id.* (citing *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 138 (1999)). Our supreme court held that, unless Wilson was allowed to plead facts alleging that the underlying plaintiff's injury occurred through Wilson's use of self-defense, the self-defense exclusion could never be triggered and the coverage would be illusory. *Id*. at 465.

¶ 25 Our supreme court's holding in *Wilson* does not support McKeown's argument in the present case. McKeown's assertion that the trial court erred in ignoring "facts pled by the nonmoving party" finds no help in *Wilson*, wherein the pleadings considered appeared in the underlying case, not in the subsequent declaratory judgment action. The explanation that the allegedly converted items were "mistakenly removed by a subcontractor" does not appear in the

record until McKeown's for declaratory judgment. McKeown's position is not supported by *Wilson*.

¶ 26    Nor does this court's jurisprudence on the "true-but-unpleaded-facts doctrine" aid McKeown. In *Shriver Insurance Agency v. Utica Mutual Insurance Co.*, 323 Ill. App. 3d 243 (2001), Shriver Insurance Agency (Shriver) filed a declaratory judgment action against its insurer, Utica Mutual Insurance Company (Utica), after Utica declined to defend Shriver in an underlying lawsuit. *Shriver*, 323 Ill. App. 3d at 246. Utica moved to dismiss Shriver's complaint, in light of a policy exclusion. *Id.* The parties filed opposing motions for summary judgment. *Id.* Shriver attached an affidavit from its president as well as his letter sent to Utica informing it of the underlying action and the facts leading to the underlying lawsuit. *Id.* The trial court granted Shriver's motion for summary judgment and found that Utica had a duty to defend Shriver because the letter constituted true but unpleaded facts known to Utica. *Id.* at 246-47.

¶ 27    On appeal, this court discussed the true-but-unpleaded-facts doctrine:

> "An insurer must defend only if the complaint alleges facts within or potentially within the coverage of the policy, unless the insurer *possesses knowledge* of true but unpleaded facts that, when taken together with the allegations in the complaint, indicate that the claim is within or potentially within the policy coverage." (Emphasis added.) *Id.* at 247.

We determined that the complaint in the underlying action alleged the type of risk that Utica intended to exclude from coverage. *Id.* at 249. Additionally, we stated that we did not believe that the true-but-unpleaded-facts doctrine "was meant to be applied to situations such as existed in this case, *i.e.*, where the only extraneous facts the insurer possessed were supplied by the insured. In such a situation the insurer has no way of knowing whether the facts are true unless it conducts an independent investigation." *Id.* at 251. "Typically, in cases where the 'true but unpleaded facts'

doctrine has been applied to show that an insurer had the duty to defend, the extraneous facts possessed by the insurer and known to be true were facts the insurer discovered during its own investigation of the underlying action." *Id.*

¶ 28    In *Pekin Insurance Co. v. Precision Dose, Inc.*, 2012 IL App (2d) 110195, this court elaborated further on the true-but-unpleaded-facts doctrine articulated in *Shriver*. There we said,

> "*Shriver* teaches that unpleaded facts that the insured gives the insurer should be viewed with suspicion when determining the duty to defend, because the insurer has no way of knowing whether the facts are true without conducting its own investigation or otherwise verifying the information independently." *Precision Dose*, 2012 IL App (2d) 110195, ¶ 44.

In *Precision Dose*, the insured defendants were sued for breach of fiduciary duty by the underlying plaintiffs, minority shareholders of Precision Dose's predecessor company. *Id.* ¶ 1. The directors of the predecessor company allegedly formed Precision Dose, Inc., which dealt in the same type of business. *Id.* Following the defendants' tender of the underlying lawsuit, the insurer, Pekin, denied that the policy covered any of the claims alleged, and it filed a declaratory judgment action seeking a declaration that it had no duty to defend. *Id.* ¶ 2. The policy provided that Pekin had a duty to defend against any suit seeking damages for "personal injury" or "advertising injury." *Id.* ¶ 15.

¶ 29    After the defendants' filed an answer, affirmative defense, and counterclaim to Pekin's declaratory judgment complaint, the parties filed cross-motions for summary judgment. *Id.* ¶¶ 18-19. The defendants argued that the underlying complaint's claims contained allegations triggering the duty to defend an "advertising injury." *Id.* at 19. The defendants supported the motion with an affidavit from Precision Dose's director, attesting that the company took over its predecessor's

marketing and advertising brochures, which it used to target the same types of customers as alleged in the underlying complaint. *Id.* at 20. Pekin moved to strike the affidavit, because the defendants had failed to show that Pekin knew of the attestations contained in the affidavit when it denied coverage under the policy. *Id.* at 21. The trial court stuck the affidavit and granted summary judgment in favor of Pekin, and defendants appealed. *Id.* at 22.

¶ 30    On appeal, the defendants relied on *Wilson* and argued that the trial court erroneously rejected the affidavit when determining Pekin's duty to defend. *Id.* at 41. This court held that the true-but-unpleaded-facts doctrine articulated in *Shriver* did not apply, as the affidavit was not plead in the underlying action. *Id.* at 43. We further found that the defendants' failure to disclose the facts in the affidavit until they filed their cross-motion for summary judgment provided more reason for striking it. *Id.* at 45. "By delaying the disclosure of additional facts bearing on Pekin's duty to defend, defendants left Pekin without knowledge of true but unpleaded facts that, when taken together with the allegations in the complaint, indicated that the claims were potentially covered by the policy." *Id.* at 46.

¶ 31    Returning to the case at bar, McKeown's explanation that the allegedly converted items were "mistakenly removed by a subcontractor" was not known to Pekin until McKeown included the explanation in its counterclaim for declaratory judgment. McKeown never provided an affidavit or other communication to inform Pekin of the identity of the subcontractor purportedly responsible for taking the items from claimants' property, further hindering any prospect of investigating the validity of McKeown's claim for coverage under the policy. Where the insurer is unaware of a purportedly true but unpleaded fact, that fact may not be considered in determining the duty to defend. *Id.* at 46 (citing *Konstant Products, Inc. v. Liberty Mutual Fire Insurance Co.*, 401 Ill. App. 3d 83, 88 (2010)). Based on this court's holdings in both *Shriver* and *Precision Dose*,

McKeown's explanatory allegations may not be considered in determining Pekin's duty to defend. McKeown's assertion that the trial court needed to consider claimants' answer to its interrogatory (see *supra* ¶ 10) is misguided for the same reason, as the answer was attached to its cross-motion for summary judgment and our review of the record reveals that it was not known by Pekin until that time. Therefore, under the well-established principles of the true-but-unpleaded-facts doctrine articulated by this court, McKeown's argument on this issue must fail.

¶ 32    McKeown further argues that the trial court erroneously drew inferences from the allegations in the underlying complaint when the court inferred that the conversion claim alleged an intent to injure claimants. McKeown asserts that the trial court improperly construed the facts alleged, because the underlying complaint does not allege that McKeown acted with knowledge of a lack of authorization or consent or that it had the ability to return the items allegedly converted. This inference of intent to injure, McKeown argues, was inconsistent with the trial court's duty to liberally construe the allegations in favor of the insured in determining whether the facts alleged fell within the policy's scope. See *Wilson*, 237 Ill. 2d at 455-56; *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 363 (2006).

¶ 33    McKeown directs this court to *Insurance Corp. of Hanover v. Shelborne Associates*, 389 Ill. App. 3d 795 (2009), to support its argument that a claim for conversion can still trigger a duty to defend when the insured asserts that it had no intent to injure. Notwithstanding the timing of McKeown's revelations that the conversion of claimants' items was an accident, the facts of the above-cited cases do not support McKeown's position.

¶ 34    In *Shelborne,* the underlying complaint contained two counts alleging the possibility of intentional or negligent conduct, in that, "[the insured] knew or should have known" that its action was "wrongful and without authorization." (Internal quotation marks omitted.) *Shelborne*, 389 Ill.

App. 3d at 803. Based on the underlying complaint's allegations, there was the possibility that the insured's liability could be found through an intentional act or negligence. *Id.* Because the underlying complaint alleged facts potentially within the policy's coverage, the insurer's duty to defend was triggered. *Id.* In contrast, the allegations in the underlying complaint in the case at bar contain no such facts to raise the possibility of any liability not rooted in McKeown's intentional act of conversion.

¶ 35 In paragraphs 20 and 21 of the underlying complaint, claimants allege the following facts regarding McKeown's conversion of items:

"20. On or about July 2013, [McKeown], without authority and knowledge of the [claimants], took hundreds of planks of knotty pine wood, a Dutch door, a hand sink, four windows and [a] glass door knowingly belonging to the [claimants] without [claimants'] consent.

21. On or about July 2013, [claimants] demanded that the hundreds of planks of knotty pine wood, a Dutch door, a hand sink, four windows and [a] glass door be returned to them and [McKeown] refused."

We cannot agree with McKeown's assertion that "refused" is an ambiguous term in the complaint that must be resolved in its favor because it could describe "a willful decision not to return items when fully capable of doing so, but just as reasonably could describe informing the claimants that it was not possible to return the items."

¶ 36 The complaint must be read as a whole to assess its true nature. *American Family Mutual Insurance Co. v. Roth*, 381 Ill. App. 3d 760, 766 (2008). The facts alleged in the complaint reveal whether the insurer has a duty to defend, not arguments as to the semantics of those facts. *Atlantic Mutual Insurance Co. v. American Academy of Orthopaedic Surgeons*, 315 Ill. App. 3d 552, 563

(2000). Here, in addition to the allegations in paragraphs 20 and 21, the underlying complaint alleged that McKeown's taking of, and refusal to return, the items was "willful, wanton, malicious, and oppressive and undertaken with the intent to defraud." Reading the complaint as a whole, the facts alleged do not lead to a reasonable interpretation that McKeown's alleged conversion was a mistake. Claimants unambiguously alleged an intentional tort of conversion.

¶ 37    As the underlying complaint clearly alleged an intentional act on the part of McKeown, the "property damage" was not caused by an "occurrence" as defined in the policy. " 'The use of the word "occurrence" in insurance policies broadens coverage and eliminates the need to find an exact cause of damages as long as they are neither intended nor expected by the insured.' " *Rock v. State Farm Fire & Casualty Co.*, 395 Ill. App. 3d 145, 149 (2009) (quoting *Indiana Insurance Co. v. Hydra Corp.*, 245 Ill. App. 3d 926, 929 (1993)). The occurrence must still be accidental. *Rock v. State Farm Fire & Casualty Co.*, 395 Ill. App. 3d at 149. An "accident" is " 'an unforeseen occurrence, usually of an untoward or disastrous character or an undesigned sudden or unexpected event of an inflictive or unfortunate character.' " *Id.* (quoting *Aetna Casualty & Surety Co. v. Freyer*, 89 Ill. App. 3d 617, 619 (1980)). "The natural and ordinary consequences of an act do not constitute an accident." *West Bend Mutual Insurance Co. v. People*, 401 Ill. App. 3d 857, 865 (2010).

¶ 38    Based on the clear and unambiguous allegations of intentional conduct by McKeown in claimants' underlying claim for conversion, no accident or "occurrence" as defined by the policy triggered Pekin's duty to defend. The trial court did not err in granting summary judgment to Pekin, as there is no reasonable interpretation of claimants' allegations other than one of intentional conversion against McKeown.

¶ 39    We now turn to McKeown's final contention. McKeown contends that the trial court erred in denying its motion to reconsider the grant of summary judgment to Pekin, because the court misapplied the law in ruling that the allegations in the underlying complaint established no possibility that an accident occurred giving rise to Pekin's duty to defend under the terms of the policy. McKeown argues that the underlying complaint makes no allegation that an injury was intended but rather raises the possibility that any injury to claimants was an accident and, thus, could be considered an "occurrence" under the policy.

¶ 40    A motion to reconsider must bring to the trial court's attention (1) newly discovered evidence, (2) changes in the law, or (3) errors in the court's previous application of existing law. *Liceaga v. Baez*, 2019 IL App (1st) 181170, ¶ 25. We review for an abuse of discretion the trial court's disposition of a motion to reconsider that is based on new evidence, facts, or legal theories not presented in prior proceedings. *Horlacher v. Cohen*, 2017 IL App (1st) 162712, ¶ 80. An abuse of discretion occurs only when the court acts so arbitrarily that no reasonable person would take the court's position. *Payne v. Hall*, 2013 IL App (1st) 113519, ¶ 12.

¶ 41    McKeown's argument here is also unpersuasive. The underlying complaint is clearly predicated on an intentional act, the alleged taking of claimant's property "without consent" and with "intent to defraud." Generally, an insurance company is under no duty to defend an insured when the nature of the conduct alleged conclusively established as a matter of law that the insured expected or intended to injure the plaintiff. See *Westfield National Insurance Co. v. Continental Community Bank & Trust Co.*, 346 Ill. App. 3d 113, 119 (2003). Based on the underlying complaint's allegations of conduct that was "willful, wanton, malicious, and oppressive and *** undertaken with the intent to defraud," the above-cited general rule of no duty to defend is

operative here. Therefore, the trial court's denial of McKeown's motion to reconsider the grant of summary judgment to Pekin was not an abuse of discretion.

¶ 42                                    III. CONCLUSION

¶ 43     For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

¶ 44     Affirmed.

**No. 2-19-0631**

| | |
|---|---|
| **Cite as:** | *Pekin Insurance Co. v. McKeown Classic Homes, Inc.*, 2020 IL App (2d) 190631 |
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 18-MR-1322; the Hon. Paul M. Fullerton, Judge, presiding. |
| **Attorneys for Appellant:** | Anthony G. Barone, Jason W. Jochum, and Zachary McGourty, of Barone Law Group, P.C., of Oakbrook Terrace, for appellants. |
| **Attorneys for Appellee:** | Robert Marc Chemers, Richard M. Burgland, and Paula K. Villela, of Pretzel & Stouffer, Chtrd., of Chicago, for appellee. |