2023 IL App (1st) 211634-U

No. 1-21-1634

Order filed April 14, 2023

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEERLESS INDEMNITY INSURANCE COMPANY, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 15 CH 15116 |
| CREMATION SERVICES, INC., DONALD GREENE FUNERAL, DONALD A. GREENE, DONALD A. GREENE II, and PEQUEENA DIXON as named class representative, | ) ) ) ) ) | Honorable Allen Price Walker, Judge, presiding. |
| Defendants-Appellants. | ) ) | |

JUSTICE NAVARRO delivered the judgment of the court.
Justices Mitchell and Lyle concurred in the judgment.

**ORDER**

¶ 1   *Held*:   We affirm the circuit court's grant of Peerless' cross-motion for summary judgment and its denial of Cremation Defendants' motion for partial summary judgment. Peerless had no duty to defend the Cremation Defendants in the underlying lawsuit where there was no "occurrence" as defined in the insurance policies, and where the professional liability endorsement did not extend coverage.

¶ 2     This appeal stems from a dispute over whether Peerless Indemnity Insurance Company (Peerless) had a duty to defend Cremation Services, Inc. (Cremation Services), Donald Greene Funeral, Donald Greene (Greene), and Donald Green II (Greene II) (collectively, the "Cremation Defendants") in an underlying putative class action lawsuit. The circuit court found that Peerless had no duty to defend the Cremation Defendants. Now the Cremation Defendants, as well as the named plaintiff in the underlying class action, Pequeena Dixon (Dixon), appeal. For the following reasons, we affirm.

¶ 3                                I. BACKGROUND

¶ 4     On May 25, 2015, Dixon and her siblings, Deborah McClain, Deveda Perkins, and Diana Owens, filed a class action lawsuit (the Dixon class action) against Cremation Services, Biological Resource Center of Illinois (BRC Illinois), Biological Resource Center (BRC), Anatomical Service, Inc. (ASI), International Biological, Inc. (IBI), and several other entities. In their Fourth Amended Complaint, the complaint at issue in this appeal, they added Greene and Greene II as named defendants. The complaint generally alleged "fraud in the inducement to body donation, the mishandling and desecration of their deceased father's body, *inter alia* making false statements and promises concerning how, when and where donated bodies will be used and remains returned."

¶ 5     The following facts were set forth in the complaint. On November 26, 2013, plaintiff's father, William Perkins, passed away. Dixon spoke to Greene II, a BRC Illinois employee, who took a medical history and informed Dixon that the body would not be sold, but rather would be used by hospitals and students for medical research. At the conclusion of this use, his body would, in its entirety, be returned for cremation and his ashes returned to his family.

¶ 6     On November 27, 2013, Dixon completed a "Willed Body to Science Document of Gift Form," which promised that Perkins' body would be treated with "dignity and respect," required

2

and authorized BRC Illinois to cremate the portion of the body not used, and provided for the return to plaintiff of the decedent's cremated remains. The complaint stated that this Gift Form was presented by BRC Illinois "in bad faith, and executed improperly."

¶ 7    On December 10, 2013, Cremation Services and BRC Illinois issued a Certificate of Cremation that stated:

> "This is to certify that the remains of William Earl Perkins, deceased, was
>
> cremated at Cremation Services, Inc., Schiller Park, Illinois, on December
>
> 10, 2013."

¶ 8    In January 2015, the Federal Bureau of Investigation (FBI) raided Donald Greene Funeral, Cremation Services, and BRC Illinois to obtain evidence that the companies illegally sold body parts for profit to IBI and BRC of Arizona.

¶ 9    On April 14, 2015, Dixon and others received notification from the Federal Bureau of Investigation (FBI) regarding a criminal investigation of these entities, stating that plaintiff's loved one's body parts may have been, or were, identified during the execution of a search warrant. Dixon was informed by the FBI that Perkins' partial remains were being held by the FBI.

¶ 10    In a subsequent conversation, an FBI agent told Dixon that her father's head and other body parts were found and seized during the investigation, other parts had been leased for medical research, and other parts had been sold. The seized body parts were "described in a condition such that Defendants' promise to treat the remains with dignity and respect were violated."

¶ 11    The Dixon complaint alleged that the named defendants were not promoting the interests of medicine and science, but rather were obtaining human remains as monetizable resources, without a fee, under false pretenses, that they then used for profit by brokering body parts.

¶ 12    Donald Greene Funeral is a funeral home that operates in conjunction with Cremation Services, a crematorium. These businesses are owned and operated by Greene, a licensed funeral director in Illinois, and his son, Greene II. Greene is the founder of ASI, a medical testing company. The Greenes also co-founded BRC, an Arizona company that uses human body parts for surgical training. BRC's other cofounder is Stephen Gore. The Greenes also operated BRC Illinois, an Illinois corporation that provides donated human remains to medical professionals, for a fee, for medical research and training. Greene is a managing partner of BRC Illinois and Greene II is its executive director.

¶ 13    The Greenes worked closely with IBI, a business that sold and rented body parts to medical professionals. Arthur Rathburn and Elizabeth Rathburn were the owners of IBI. The warrant issued by the FBI made a business connection between Greene and Arthur Rathburn and asserted a "close relationship" between BRC Illinois and BRC.

¶ 14    The complaint alleged that the FBI raided BRC Illinois and Cremation Services, looking for evidence about allegations that the companies sold body parts illegally. The warrant stated that the FBI had probable cause to believe there was evidence of conspiracy to commit mail fraud, wire fraud, interstate transportation of stolen property, and evidence of false statements. It was alleged by the FBI that these defendants were suspected of selling body parts for profit, of which many parts were sold to BRC and IBI, which was also being investigated by the FBI.

¶ 15    On or about October 5, 2015, Gore pled guilty in Arizona to the state charge of illegally conducting an enterprise, a Class 3 Felony from January 1, 2010, to January 31, 2014, related to body donation tissue trafficking. The agreement acknowledged that Gore:

> "maintained control of BRC by investing proceeds obtained through a scheme or
>
> artifice to defraud, a racketeering offense, Stephen Gore provided vendors with

human tissue that was contaminated, or that was not authorized to be used by these vendors according to the donor's wishes."

¶ 16    On January 19, 2016, a Federal Grand Jury indicted Arthur and Elizabeth Rathburn for several charges including wire fraud, transportation of hazardous material, and false statements in an alleged scheme involving the distribution of body parts, some that tested positive for diseases. Among the allegations were that IBI obtained most of its bodies from the Chicago-based companies ASI and BRC Illinois, that in turn obtained many of their bodies from BRC. Elizabeth Rathburn pleaded guilty to wire fraud in March 2016. Arthur Rathbrun was convicted of wire fraud, illegally transporting hazardous material, and lying to federal investigators about his body parts scheme, in January 2018.

¶ 17    Cremation Services, Donald Greene Funeral, BRC Illinois, Greene, and Greene II have been named in a total of 11 lawsuits alleging that they deliberately made misrepresentations to clients and mistreated cadavers in their possession.

¶ 18    On April 3, 2019, Greene was criminally indicted on federal charges of fraud, misprision of a felony, and criminal forfeiture charges for engaging in a scheme to defraud BRC Illinois customers by falsely representing that the human remains he sold tested negative for infectious diseases. Greene II admitted knowledge of this scheme and taking affirmative actions to conceal it. Greene and Greene II pled guilty to these charges on December 19, 2019.

¶ 19    The Dixon Complaint set forth several counts. Some counts had been previously dismissed, so we will only discuss those counts relevant to this appeal. Count IA was for the tortious interference with a dead body and alleged that defendants failed to properly disclose its process and scheme for remains, and that they mishandled or mutilated the remains. Plaintiff alleged that defendants made false statements and promises concerning how, when, and where donated bodies

would be used, resulting in retained body parts, unidentified and lost bodies, and the issuing of false certificates of cremation.

¶ 20    Count IB was for intentional infliction of emotional distress and alleged that defendants' failure to properly disclose their process and scheme, and their handling and accounting for remains was extreme and outrageous, and that defendants intentionally caused emotional distress. Plaintiff alleged that by retaining body parts for an indefinite time, selling and transferring the remains, omitting material facts about body donation, making false statements and promises concerning how, when, and where donated bodies would be used, and issuing false certificates of cremation, defendants knew or should have known that plaintiff and the proposed class were the intended beneficiaries of their services and this was a violation of their duty.

¶ 21    Count IIB was for promissory estoppel and alleged that defendants promised to treat a donated body with dignity and respect, and they breached that promise by dismembering the body, retaining parts of the body for an indefinite period of time, selling and transferring the remains, omitting material facts about body donation, making false statements and promises concerning how, when, and where donated bodies would be used, and issuing false certificates of cremation.

¶ 22    Count III was for negligence and alleged that defendants "failed to properly monitor the operations, actions and events (including record keeping) and made false statements and promises concerning how, when and where donated bodies will be used, thus allowing for the decedents to be mishandled, abused, and desecrated, resulting in indefinitely retained body parts, unidentified and lost bodies, and the issuing of false Certificates of Cremation."

¶ 23    At the time of the FBI raid, Cremation Services and Donald Greene Funeral were insured by Peerless. The liability insurance coverage was effective December 31, 2011 to December 31,

2015. The policies included a Commercial Protector Coverage Form (Businessowners Coverage Form), which provided in relevant part:

> "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."

¶ 24    The Peerless policies defined bodily injury as a "physical injury, sickness or disease sustained by a person," which includes "mental anguish, mental injury, shock, fright or death that results from such physical injury, sickness or disease." Property damage was defined as either "(1) physical injury to tangible property, including all resulting loss of use of that property, or (2) loss of use of tangible property that is not physically injured." Under the policies, both bodily injury and property damage must be caused by an "occurrence" which takes place during the policy period. "Occurrence" was defined in the policies as "an accident, including continuous or repeated exposure to substantially the same generally harmful conditions."

¶ 25    The Peerless policies also contained an Exclusion for Expected or Intended Injuries which provided: "[t]here is no coverage for bodily injury or property damage expected or intended from the standpoint of the insured." The policies further required that, prior to the policy period, neither the insured nor any employee authorized by the insured to give or receive notice of an occurrence or claim knew that the bodily injury or property damage had occurred in whole or in part. The policies stated: "[y]ou must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim."

¶ 26   The policies also contained a Funeral Directors' Professional Liability Endorsement (PLE), which provided:

"Coverage also applies to 'bodily injury,' 'property damage' or 'personal and advertising injury' arising out of the rendering of or failure to render professional services as a funeral director, embalmer or other person whose responsibility it is to handle, cremate, embalm, transport, dispose of, disinter, remove, or bury the remains of a deceased human body."

¶ 27   The PLE included a Criminal Acts Exclusion, precluding coverage for "bodily injury, property damage, personal and advertising injury, or other injury arising directly or indirectly out of a criminal act including, but not limited to, fraud committed by the insured or any person for whom the insured is legally responsible."

¶ 28   In March 2015, the Cremation Defendants tendered their defense of the Dixon Class Action to Peerless. In October 2015, Peerless agreed to participate in the defense of the Cremation Defendants in the underlying lawsuit under a reservation of rights, but also filed suit for declaratory judgment, seeking a declaration that it did not owe a duty to defend or indemnify the Cremation Defendants in the underlying suit. Peerless also requested an order requiring the Cremation Defendants to reimburse Peerless for past defense costs upon a showing of proof.

¶ 29   On December 13, 2017, the Cremation Defendants filed a motion for partial summary judgment against Peerless on the issue of whether Peerless had a duty to defend them in the underlying suits pursuant to the Peerless policies and the PLE. The Cremation Defendants claimed that the causes of action alleged in the underlying suit fell within, or potentially within, the Peerless policies, giving rise to its duty to defend.

¶ 30    Peerless filed a cross-motion for summary judgment claiming there could be no coverage under the language of the policies because the underlying suit did not allege an "occurrence, bodily injury, or property loss," as defined by the Peerless policies. Peerless maintained there was no coverage under the PLE because the intentional conduct did not constitute rendering professional services as a funeral director, and because the underlying suit concerned allegations of criminal activity. Peerless also asserted that the Expected and Intended Exclusion precluded coverage because the Cremation Defendants intended or could have reasonably anticipated the harm that their actions would cause the plaintiffs in the underlying suit. And finally, Peerless argued that the Cremation Defendants failed to satisfy the notice provision of the Peerless policies, a condition precedent for coverage.

¶ 31    The circuit court granted Peerless' motion for summary judgment, finding that it had no duty to defend the Cremation Defendants in the underlying lawsuit for several reasons. It found that the Cremation Defendants failed to establish how the underlying suit alleged an occurrence, bodily injury, or property damage under the Peerless policies, and that the Cremation Defendants failed to provide adequate notice as required under the policies. While the court agreed with the Cremation Defendants that a question of material fact existed as to Peerless' duty to defend under the Criminal Acts Exclusion, it found that it did not preclude summary judgment in Peerless' favor because of the Court's finding that the Cremation Defendants failed to prove an occurrence, bodily injury, or property damage under the policies. The court also denied the Cremation Defendants' request for attorney fees.

¶ 32    Peerless then filed a motion for entry of judgment and reimbursement, indicating that it was entitled to be reimbursed by the Cremation Defendants for all the defense fees and expenses it previously incurred in defending them in the underlying suit. Cremation Defendants responded

that Greene and Greene II were not named in the underlying suits and therefore were not personally responsible for reimbursement. The circuit court granted Peerless' motion for entry of judgment and reimbursement. The parties do not reference, and we do not see, a transcript of a hearing on this motion in the record.

¶ 33    The Cremation Defendants and the named class action plaintiff (Dixon) from the underlying lawsuit now appeal.

¶ 34                                    II. ANALYSIS

¶ 35    On appeal, the Cremation Defendants and Dixon allege that the circuit court erroneously granted summary judgment in favor of Peerless where it found that Peerless had no duty to defend the Cremation Defendants in the underlying lawsuit. Summary judgment is appropriate when the pleadings, depositions, admissions, and affidavits, viewed in a light most favorable to the nonmovant, fail to establish that a genuine issue of material fact exists, thereby entitling the moving party to judgment as a matter of law. 735 ILCS 5/2-1005 (West 2018). If disputes as to material facts exist or if reasonable minds may differ with respect to the inferences drawn from the evidence, summary judgment may not be granted. *Fox v. Seiden*, 2016 IL App (1st) 141984, ¶ 12. We review a circuit court's decision to grant summary judgment *de novo*. *Illinois Tool Works Inc. v. Travelers Casualty & Surety Co.*, 2015 IL App (1st) 132350, ¶ 8. When, as here, parties file cross-motions for summary judgment, they agree that no genuine issues of material fact exist, and they invite the court to decide the case as a matter of law based on the record. *Casey's Marketing Co. v. Hamer*, 2016 IL App (1st) 143485, ¶ 11.

¶ 36    As this court recently explained:

        "The construction of an insurance policy and the determination of the parties' rights

        and obligations thereunder are questions of law. To determine whether an insurer

                                            10

has a duty to defend the insured, a court must compare the allegations in the underlying complaint to the relevant provisions of the insurance policy. When determining whether an insurer has a duty to defend an insured, the allegations in the underlying complaint must be liberally construed in favor of coverage. An insurer's refusal to defend an insured is justified only if it is clear from the face of the underlying complaint that the allegations fail to state facts that bring the cause within or potentially within coverage." (Internal quotations omitted). *Evergreen Real Estate Services, LLC v. Hanover Insurance Company*, 2019 IL App (1st) 181867, ¶ 17.

¶ 37     Under the express language of the Peerless policies, "bodily injury" or "property damage" must be caused by an "occurrence." The Peerless insurance policies define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same generally harmful conditions." The term "accident" is not defined in the policies. In Illinois, the term "accident" is defined as "an unforeseen occurrence, usually of an untoward or disastrous character, with a result that is unintended and unexpected." *Farmers Automobile Insurance Ass'n v. Danner*, 2012 IL App (4th) 110461, ¶ 34 (citing *Pekin Insurance Co. v. Dial*, 355 Ill. App. 3d 516, 520 (2005)). The natural and ordinary consequences of an act do not constitute an accident. *Dial*, 355 Ill. App. 3d at 520. To determine whether the alleged conduct of an insured involves a covered event, a court may also inquire "whether the person performing the acts leading to the result intended or expected the result." *Country Mutual Insurance Co. v. Carr*, 372 Ill. App. 3d 335, 341 (2007). If the actor intended or expected the result, the event was not an accident. *Id.*

¶ 38     In Illinois, our courts have consistently found that fraudulent acts are not occurrences. See *Pekin Insurance Co. v. McKeown Classic Homes, Inc.*, 2020 IL App (2d) 190631, ¶ 36-38 (no

occurrence where underlying complaint alleged that insured stole hundreds of items from claimants); *West American Insurance Co. v. Midwest Open MRI, Inc*., 2013 IL App (1st) 121034, ¶ 23 (no occurrence where complaint alleged insured engaged in a conspiracy and scheme to obtain kickbacks from medical providers); *West Bend Mutual Insurance Co. v. People*, 401 Ill. App. 3d 857, 866 (2010) (complaints did not allege occurrences where the allegations were for fraud and intentional acts of faulty workmanship).

¶ 39    Here, the Dixon complaint alleged that the Cremation Defendants deliberately misled families so that they might obtain cadavers from them for no fee, while mistreating and profiting from the sale of human remains. There was nothing accidental about these allegations. Count IA was for the tortious interference with a dead body and alleged that defendants failed to properly disclose its process and scheme for remains, and that they mishandled or mutilated the remains. It alleged that the Cremation Defendants made false statements and promises concerning how, when, and where donated bodies would be used, resulting in retained body parts, unidentified and lost bodies, and the issuing of false certificates of cremation. Count IB was for intentional infliction of emotional distress and alleged that defendants' failure to properly disclose their process and scheme, and their handling and accounting for remains was extreme and outrageous, and that defendants intentionally caused emotional distress. Count IIB was for promissory estoppel and alleged that defendants promised to treat a donated body with dignity and respect, and they breached that promise by dismembering the body, retaining parts of the body for an indefinite period of time, selling and transferring the remains, omitting material facts about body donation, making false statements and promises concerning how, when, and where donated bodies would be used, and issuing false certificates of cremation. These allegations are all for intentional, fraudulent acts, and therefore cannot be "occurrences" as defined by Peerless' insurance policies.

¶ 40    The Cremation Defendants maintain that because Count III was for negligence, it fell within potential coverage, and therefore Peerless had a duty to defend them in the class action. Peerless counters that while Count III of the underlying complaint is titled "negligence" and employs terminology associated with negligence, the count predicates liability on the same intentional conduct alleged in Counts IA, IB, and IIB, and not on an inherently accidental "occurrence" as required by the policies. We agree.

¶ 41    In determining whether an insurance company has a duty to defend, courts are not required "to consider in isolation and ignore facts pleaded in other counts," where the plaintiff has pled separate counts against various defendants but not pled in the alternative. *Illinois Casualty Co. v. Turpen*, 84 Ill. App. 3d 288, 293 (1980). Courts give "little weight to the legal label that characterizes the underlying allegations." *Lexmark International, Inc. v. Transportation Insurance Co.*, 327 Ill. App. 3d 128, 135 (2001). "It is not the form of the pleadings, but it is the nature of the insured's conduct which determines coverage." *Travelers Insurance Cos. v. P.C. Quote, Inc.*, 211 Ill. App. 3d 719, 729 (1991). The factual allegations of the complaint rather than the legal theory under which the action is brought will determine whether there is a duty to defend. *Id*.

¶ 42    While Count III was presented as a claim for negligence, it states that defendants made false statements and promises concerning how, when, and where donated bodies would be used, thus allowing for the decedents to be mishandled, abused, and desecrated, resulting in indefinitely retained body parts, unidentified and lost bodies, and the issuing of false certificates of cremation. The Dixon complaint also contains general factual allegations including: the Gift Form was presented by the defendants to the plaintiffs "not in good faith, but in bad faith"; defendants' conduct in handling and accounting for the remains, and selling or holding remains indefinitely, was intentional; defendants knew or should have known that the plaintiffs would be injured; and

13

defendants violated all applicable laws and basic human decency. The complaint further alleged that defendants fraudulently induced families to donate human remains by promising them that the remains would be treated respectfully and used only for educational purposes, while in fact the Cremation Defendants mishandled the remains and sold body parts for profit.

¶ 43     In *State Farm Fire and Casualty Co. v. Young*, 2012 IL App (1st) 103736, ¶ 23, this court considered whether an insurer had a duty to defend an insured in a wrongful death action where the insured allegedly caused the decedent's death by providing her with heroin on which she overdosed and beating her. The insured argued that since the underlying suit charged him with negligence for failing to call 911 and to report the decedent's injuries, the insurer had a duty to defend him under his parents' homeowner's insurance policy and personal liability umbrella policy, which provided coverage for an accident resulting in bodily injury or property damage. *Id.* ¶ 23. This court disagreed, finding that although certain counts were listed as "falling under the theory of 'negligence,' the allegations support only one conclusion, that the defendant chose not to seek help for [the victim]." *Id.* ¶ 29.  This court noted that none of the defendant's actions could reasonably be called accidental, even though the acts of the defendant were characterized as "negligent" in the complaint. *Id.* Rather, the victim's "injuries and her eventual death were a 'natural and ordinary consequence' of the defendant's failure to get help." *Id.* (citing *Aetna Casualty & Surety Co. v. Freyer*, 89 Ill. App. 3d 617, 619 (1980)).

¶ 44     Similarly, here, the allegations that the Cremation Defendants failed to properly monitor the operations, actions, and events of their businesses, and failed to properly maintain records are natural and ordinary consequences of the claim that the Cremation Defendants intentionally misled families so that they could obtain cadavers from them for no fee, while mistreating the bodies and profiting from the sale of the human remains. See *McKeown Classic Homes*, 2020 IL App (2d)

190631, ¶ 36 ("The facts alleged in the complaint reveal whether the insurer has a duty to defend, not arguments as to the semantics of those facts.") The basis of all the claims in the Dixon Complaint is that the Cremation Defendants were engaged in an intentional scheme to mislead families, and as the circuit court noted, if the Cremation Defendants failed to keep proper records or monitor the operation of their businesses, they did so deliberately. Their conduct was not the result of mere human error or oversight, but rather the natural and ordinary consequence of the intentional decision to engage in deceptive or misleading business practices. Accordingly, because these circumstances do not amount to an "occurrence" as defined under the Peerless policies, we need not address the Cremation Defendants' arguments regarding whether there was "bodily injury" or "property damage," because under the express language of the Peerless policies, "bodily injury" or "property damage" must be caused by an "occurrence." The circuit court did not err in granting summary judgment to Peerless.[1]

¶ 45    Alternatively, appellants argue that the Funeral Directors' PLE expanded the definition of "occurrence" under the Peerless policies, triggering Peerless' duty to defend. However, as the circuit court found, the conduct at issue in the underlying class action does not constitute "rendering of or failure to render professional services as a crematorium." See *Crum & Forster Managers Corp. v. Resolution Trust Corp*., 156 Ill. 2d 384 (1993).

¶ 46    The PLE at issue provides:

> "Coverage also applies to 'bodily injury', 'property damage' or 'personal and
> advertising injury' arising out of the rendering of or failure to render professional
> services as a funeral director, embalmer or other person whose responsibility it is

---

[1] Appellants' citation to an Eastern District of Pennsylvania case, *Nationwide Mutual Insurance Co. v. Garzone*, 2009 WL 2996468 (E.D. Pa. Sept. 17, 2009), does not convince us otherwise. "Illinois courts do not look to the law of other states when there is relevant Illinois case law available." *In re Estate of Walsh*, 2012 IL App (2d) 110938, ¶ 45. As outlined in this Order, relevant Illinois case law is available, and we are compelled to follow it.

to handle, cremate, embalm, transport, dispose of, disinter, remove, or bury the remains of a deceased human."

¶ 47    Professional liability policies are "designed to insure members of a particular professional group from the liability that arises out of a special risk such as negligence, omissions, mistakes, and errors inherent in the practice of the profession." *Rosalind Franklin University of Medicine and Science v. Lexington Insurance Co.*, 2014 IL App (1st) 113755, ¶ 83. "Therefore, such policies generally will be construed to provide coverage only for those risks that are 'inherent' in the practice of the professional services of the insured." *Landmark American Insurance Co. v. NIP Group, Inc.*, 2011 IL App (1st) 101155, ¶ 27.

¶ 48    In *Crum & Forster*, the underlying lawsuit alleged that, while employed by one real estate company, the insured real estate agents formed another real estate company as a competitor to their current employer. The agents induced others on their current employer's sales staff to leave and join their new venture, induced other employees at their current employer to list properties with their new venture rather than with their current employer, utilized their employer's confidential sales techniques for the benefit of their new venture, and stole clients from their current employer for the benefit of their new venture. *Id*. at 389. Our supreme court determined that the risk of conducting one's business in an unfair and tortious manner was not inherent in the practice of the real estate profession, and therefore beyond the scope of the insurer's duty to defend. *Id*. at 393.

¶ 49    Likewise, in the case at bar, the conduct alleged in the underlying complaint cannot be characterized as a failure to provide professional cremation services. The Dixon complaint alleged tortious conduct and unfair business practices by the Cremation Defendants. The complaint alleged that Cremation Defendants engaged in this conduct deliberately, in bad faith, and while lying to the families of the recently deceased so they could profit from the sale of cadavers. As previously

explained, the allegation of negligence alleged intentional conduct, namely making false statements concerning how, when, and where the donated bodies would be used. The underlying suit alleged that Cremation Defendants failed to properly monitor operations and keep proper records. It alleged that they mishandled, abused, and desecrated the cadavers. Accordingly, we find that the risks of tortious behavior and unfair business practices are not inherent in rendering professional services as a funeral home or crematorium, and therefore not covered by the PLE.

¶ 50    As a final matter, Greene and Greene II contend that the circuit court erroneously ordered them, as individuals, to reimburse Peerless for its defense of Cremation Services in the underlying lawsuit. We remind the Greenes that pursuant to Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020), the appellants' opening brief must set forth contentions supported with argument, citations to the record on appeal, and citations to authority. This section of the brief contains no citations to the record on appeal and no citations to any legal authority. The failure to provide proper citations is a violation of Rule 341(h)(7), the consequence of which is the forfeiture of the argument. *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 12; see also *Ammar v. Schiller, DuCanto and Fleck, LLP*, 2017 IL App (1st) 162931, ¶ 18 (appeal dismissed for violation of appellate procedural rules). Peerless raised these deficiencies in its response brief, but appellants chose not to rectify the violations in their reply brief. Compare *Voris v. Voris*, 2011 IL App (1st) 103814, ¶ 9 (where the appellant attempted to correct some of the deficiencies in his reply brief, the reviewing court addressed the merits of the appellant's issues). Accordingly, this argument is forfeited.

¶ 51                              II. CONCLUSION

¶ 52    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 53    Affirmed.