2024 IL App (1st) 221396-U

No. 1-22-1396

Order filed March 22, 2024

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| STATE AUTO PROPERTY & CASUALTY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Appeal from the Circuit Court of Cook County. |
| DISTINCTIVE FOODS, LLC, A DELAWARE LIMITED LIABILITY COMPANY, and RYKRISP, LLC, A MINNESOTA LIMITED LIABILITY COMPANY, | ) ) ) ) | No. 19 CH 00099 |
| | ) ) | Honorable Alison C. Conlon, |
| Defendants. | ) ) | Judge Presiding. |
| (Distinctive Foods, LLC, | ) ) | |
| Appellant.) | ) | |

JUSTICE LYLE delivered the judgment of the court.
Presiding Justice Mitchell and Justice Navarro concurred in the judgment.

**ORDER**

¶ 1   *Held*:   We affirm the judgment of the circuit court finding that the plaintiff insurance company did not have a duty to defend the defendant insured where the claims in

the underlying plaintiff's complaint did not fall within the coverage provided by the insurance policies.

¶ 2      This appeal concerns whether Plaintiff-Appellee, State Auto Property & Casualty Insurance Company (State Auto) owed Defendant-Appellant, Distinctive Foods, LLC (Distinctive) a duty to defend or indemnify it in an underlying lawsuit. In the underlying litigation, RyKrisp, LLC (RyKrisp), a manufacturer of crackers, brought suit against Distinctive, alleging claims of detinue, conversion, replevin, tortious interference with a contract, and tortious interference with a business expectancy after Distinctive wrongfully seized and withheld RyKrisp's cracker-manufacturing equipment and interfered with RyKrisp's contractual, business relationship with a third party (the Underlying Litigation). At the time of the events alleged in the Underlying Litigation, Distinctive had two insurance policies with State Auto: A Businessowners Liability Insurance Policy (the BOP Policy) and a Commercial Umbrella Liability Insurance Policy (the Umbrella Policy).

¶ 3      State Auto brought the declaratory judgment action at bar seeking a declaration that it did not have a duty to defend or indemnify Distinctive in the Underlying Litigation under either policy. The circuit court ultimately granted State Auto's motion for summary judgment finding that it had no duty to defend Distinctive under either policy, in part because Distinctive's CEO acted intentionally with the knowledge that his actions would cause harm to RyKrisp.

¶ 4      On appeal, Distinctive contends that the circuit court erred when it refused to consider facts outside of State Auto's complaint in determining whether it had a duty to defend. Distinctive further asserts that the court erred in finding that the policies did not provide coverage for the claims for detinue, conversion, and tortious interference. Distinctive also maintains that the court erroneously found that one of the exclusions in the policy applied to bar coverage. Finally,

Distinctive contends that it was entitled to attorney fees and sanctions where State Auto acted vexatiously and unreasonably in denying the claim for coverage. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 5                                    I. BACKGROUND

¶ 6                              A. The Underlying Litigation

¶ 7      In its complaint against Distinctive, RyKrisp alleged that Distinctive had unlawfully seized and was wrongfully detaining its manufacturing equipment, which prevented it from selling its product. RyKrisp purchased cracker manufacturing equipment and entered into a business relationship with Distinctive under which Distinctive agreed to manufacture the crackers for RyKrisp at a manufacturing facility. RyKrisp alleged that it became concerned about Distinctive's ability to manufacture RyKrisp brand crackers efficiently and cost-effectively and therefore RyKrisp moved all of its equipment from the manufacturing facility to its warehouse. Distinctive personnel, at the direction of its Chief Executive Officer, Joshua Harris, entered the RyKrisp warehouse, seized the equipment, and transported it back to the manufacturing facility. Distinctive then changed the locks to the manufacturing facility, preventing RyKrisp from entering the facility and retrieving the equipment. RyKrisp demanded that Distinctive return the equipment, but Distinctive refused.

¶ 8      RyKrisp contracted with another cracker manufacturer, iBake Foods, LLC (iBake), to manufacture RyKrisp brand crackers at the iBake facility. After an order of replevin was issued in its suit against Distinctive, RyKrisp's equipment was shipped to the iBake manufacturing facility. After learning of the agreement between RyKrisp and iBake, Mr. Harris contacted iBake and told them to not manufacture RyKrisp brand crackers "without justification and out of spite for RyKrisp." During the conversation, Mr. Harris "deliberately disparaged RyKrisp and/or RyKrisp

personnel." Mr. Harris, through his attorneys, then issued a cease and desist letter to iBake advising iBake that RyKrisp and Distinctive entered into a confidentiality agreement and instructing iBake to not use any of Distinctive's proprietary information in connection with the services it was providing to RyKrisp. As a result of the cease and desist letter and the conversation, iBake terminated its agreement with RyKrisp. RyKrisp alleged that Mr. Harris acted "out of malice" in contacting iBake and causing the cease and desist letter to be sent. Based on this factual background, RyKrisp raised counts of detinue, conversion, replevin, tortious interference with contract, and tortious interference with business expectancy.

¶ 9    Distinctive filed an answer, affirmative defenses, and a counterclaim to RyKrisp's complaint in which it alleged, *inter alia*, that it was entitled to retain possession of RyKrisp's equipment because it had a possessory lien for certain improvements and repairs it made to the equipment.

¶ 10                              B. The Insurance Policies

¶ 11    In April 2018, Distinctive tendered RyKrisp's complaint to State Auto and requested a defense and indemnity under the policies. As relevant here, the BOP Policy provided coverage for bodily injury and property damage under "Coverage A Bodily Injury and Property Damages Liability" (Coverage A) as follows:

"1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to

which this insurance does not apply. We may, at our discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result.

\*\*\*

b. This insurance applies to 'bodily injury' and 'property damage' only if:

(1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes places in the 'coverage territory.' "

The BOP policy defined an "Occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy further defined "Property damage" as:

"a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

¶ 12 The BOP Policy further provided coverage for personal and advertising injury under "Coverage B Personal and Advertising Injury Liability" (Coverage B) as follows:

" 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'personal and advertising injury' to which

this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or 'suit' that may result.

\*\*\*

b. This insurance applies to 'personal and advertising injury' caused by an offense arising out of your business but only if the offense was committed in the 'coverage territory' during the policy period."

The BOP policy defined "personal and advertising injury" to include "consequential 'bodily injury' arising out of \*\*\*\* [o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services."

¶ 13    Coverage B also provided for a number of exclusions that will preclude coverage. As relevant here:

"This insurance does not apply to:

a. Knowing Violation Of Rights Of Another

'Personal and advertising injury' caused by or at the direction of an insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'

b. Material Published With Knowledge Of Falsity

'Personal and advertising injury' arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity."

The Umbrella Policy contained substantially similar provisions and terms. For the sake of efficiency, references to Coverage A and Coverage B will refer to that coverage under both policies. The BOP Policy and Umbrella Policy will collectively be referred to as the "policies."

¶ 14                          C. State Auto Denies Coverage

¶ 15    In a letter dated May 23, 2018, a State Auto representative advised that although its investigation of the matter was continuing, it agreed to defend Distinctive against the allegations raised in RyKrisp's complaint "pursuant to a full reservation of rights as enumerated below." The letter advised Distinctive that there was no coverage under Coverage A because RyKrisp's complaint did not contain any allegations of damages due to "bodily injury" or "property damage" caused by an "occurrence." The letter provided, however, that subject to the reservation of rights, State Auto would defend Distinctive under Coverage B. The letter noted that RyKrisp alleged that Mr. Harris "deliberately disparaged" RyKrisp and/or its personnel.

¶ 16    RyKrisp and Distinctive entered into settlement negotiations and Distinctive kept State Auto apprised of those discussions. While the negotiations were ongoing, State Auto informed Distinctive that there was no coverage under the policies. Because of State Auto's denial of coverage, the settlement negotiations ended. The Underlying Litigation proceeded to trial where a jury found in favor of RyKrisp in the amount of $8,359,039.

¶ 17               D. State Auto's Complaint for Declaratory Judgment

¶ 18    On January 4, 2019, State Auto filed its initial complaint for declaratory judgment seeking a judgment that it had no duty to defend Distinctive in the Underlying Litigation and seeking a reimbursement of defense costs. State Auto ultimately filed a second amended complaint in which it alleged that it had no duty to defend Distinctive because RyKrisp's complaint did not allege "bodily injury" or "property damage," and did not allege damages for "personal and advertising

injury." State Auto also contended that the complaint did not allege any damages caused by an "occurrence." State Auto maintained that RyKrisp's complaint sought damages for intentionally tortious conduct, including tortious interference with a contract or business expectancy, which was not covered under the policies.

¶ 19    State Auto further contended that the duty to defend did not include prosecuting Distinctive's counterclaims against RyKrisp. State Auto also asserted, in the alternative, that it had no duty to indemnify Distinctive for any part of the judgment amount because part of the judgment included punitive damages, which were not coverable under the policies. With regard to the non-punitive amount of the award, State Auto maintained that there was no indication that the jury found in RyKrisp's favor based on personal and advertising injury. Finally, State Auto sought reimbursement for defense costs that it incurred on Distinctive's behalf while it investigated whether coverage existed in the Underlying Litigation.

¶ 20    Distinctive filed an answer and counterclaims to State Auto's complaint. Distinctive attached to its answer correspondences between Distinctive's counsel and State Auto regarding settlement negotiations and whether State Auto would contribute to Distinctive's defense or engage in settlement negotiations. Distinctive asserted that if State Auto had engaged in settlement negotiations, RyKrisp's claims could have been settled for a "reasonable amount." In its counterclaim, Distinctive sought a declaratory judgment that State Auto had a duty to defend and indemnify under the policies, and alleged that State Auto acted in bad faith in refusing to settle and acted vexatiously and unreasonably in denying coverage.

¶ 21    State Auto filed a motion for partial summary judgment on its claims that it had no duty to defend Distinctive under the policies. State Auto also sought summary judgment on all of the claims raised in Distinctive's counterclaim. State Auto maintained that RyKrisp's claims for

detinue and conversion did not allege facts to trigger coverage because they did not allege an "occurrence." State Auto asserted that an occurrence is an "accident." RyKrisp alleged that Distinctive acted "willfully" in seizing and withholding its equipment, which implied intention. State Auto contended that there was therefore no coverage under Coverage A.

¶ 22    State Auto also asserted that RyKrisp's complaint did not allege any claims for personal or advertising injury under Coverage B because the claims did not fall within the policies' definitions of those terms. State Auto noted that Distinctive claimed that RyKrisp's claim for tortious interference triggered coverage because RyKrisp alleged that Mr. Harris disparaged it in his conversation with iBake, but State Auto asserted that RyKrisp was not required to prove disparagement to prevail on its claim of tortious interference, and personal and advertising injury required disparagement in order to fall within the policies' definitions.

¶ 23    In the alternative, State Auto asserted that the exclusions in the policies barred coverage. Specifically, the policies barred coverage for "knowing violation of rights of another." State Auto pointed out that RyKrisp alleged that Distinctive acted "deliberately," knowing that its actions would violate RyKrisp's rights. The policies also contained an exclusion for personal and advertising injury arising out of oral or written publication of material where the insured knows of its falsity. State Auto noted that RyKrisp alleged that Distinctive acted "out of spite," which again implied that Distinctive acted knowingly and intentionally. Finally, State Auto contended that Distinctive's bad faith claim must fail because there was a *bona fide* dispute as to coverage.

¶ 24    In response, Distinctive contended that the detinue and conversion claims fell within Coverage A because RyKrisp's injuries arose out of property damage. Distinctive asserted that the injuries were caused by an occurrence and evidence presented during the Underlying Litigation showed that Distinctive mistakenly believed that it had a right to seize RyKrisp's equipment. For

instance, Distinctive pointed out that at trial, Mr. Harris testified that Distinctive believed it had the legal authority to withhold RyKrisp's property. Distinctive maintained that it therefore did not "intend" to cause property damage. Distinctive also pointed out that in its counterclaims against RyKrisp, it argued that it had a right to seize and withhold the equipment. Distinctive contended that RyKrisp's allegation that Distinctive acted "willfully" related to Distinctive's intention to commit the act of withholding the equipment, not the willfulness of the injury. Distinctive also noted that RyKrisp alleged that Distinctive alternatively acted with "gross negligence" in retaining the property. Distinctive maintained that this allegation of negligence triggered State Auto's duty to defend under the policies.

¶ 25    Distinctive next asserted that the tortious interference claims were covered under Coverage B because RyKrisp's allegations were based on Mr. Harris' disparaging statements to iBake. Distinctive maintained that these disparaging comments formed the basis for RyKrisp's allegations that Distinctive interfered with its contract with iBake, which constituted personal and advertising injury under the policies.

¶ 26    Distinctive also contended that the exclusions did not apply to bar coverage because Distinctive did not know that its acts violated RyKrisp's rights and did not know that its disparaging comments were false. Distinctive again cited Mr. Harris' testimony from trial in the Underlying Litigation, which it contended showed Distinctive's belief that RyKrisp owed Distinctive money for repairs it performed and therefore Distinctive was entitled to retain the equipment. As a result, Mr. Harris believed that his comments to iBake were true. Distinctive maintained that the manner in which RyKrisp framed its allegations, contending that Distinctive acted out of "malice" and with "spite," was not sufficient to trigger either exclusion. Distinctive asserted that these allegations did not amount to a "knowing" violation of the rights of another.

¶ 27    Finally, Distinctive argued that there was no *bona fide* dispute as to coverage because the detinue and conversion claims clearly fell under Coverage A. Distinctive maintained that because State Auto had a duty to defend Distinctive on one claim, it was required to defend against the entire action. Distinctive also asserted that State Auto had a duty to act in good faith in settlement negotiations. Distinctive concluded that at the very least there was a genuine issue of material fact as to whether State Auto acted in bad faith in refusing to settle the Underlying Litigation, which precluded an entry of summary judgment.

¶ 28    In reply, State Auto contended that Mr. Harris' testimony from the trial in the Underlying Litigation was not relevant in determining whether State Auto had a duty to defend. Instead, whether an insurer has a duty to defend is determined solely by reference to the allegations in the complaint. State Auto acknowledged that under certain circumstances, courts will consider "true but unpleaded facts" of which the insurer had knowledge in determining whether coverage exists, but State Auto maintained that the insurer, rather than the insured, must be the source of those facts in order for the court to determine whether the insurer knew the unpled facts to be true. State Auto contended that Mr. Harris' trial testimony was not proper extrinsic evidence to support a duty to defend and should not be considered by court. Consistent with its motion, State Auto also contended that RyKrisp's complaint did not allege an "occurrence," that the policies did not provide coverage for the claims of tortious interference with contract and tortious interference with business expectancy, that the exclusions in the policies barred coverage, and that there was a *bona fide* dispute as to coverage, precluding a claim for bad faith.

¶ 29    In ruling on the motion for partial summary judgment, the circuit court found that it was not proper for it to consider Mr. Harris' trial testimony from the Underlying Litigation. The circuit court also found that it should disregard the allegations raised in Distinctive's counterclaims

against RyKrisp. The court noted that insurance policies should be construed liberally in favor of the insured and the terms in the policies should be given their plain and ordinary meaning.

¶ 30    The court found that counts for detinue and conversion in the Underlying Complaint did not adequately allege an occurrence under the policies because they did not allege that there was anything accidental about Distinctive's seizure of RyKrisp's equipment. The court relied on *Pekin Insurance Co. v. McKeown Classic Homes, Inc.*, 2020 IL App (2d) 190631, finding it "squarely on point." The court found that there were no allegations or even inferences to be drawn from the Underlying Complaint that the seizure of the equipment was unintended, unexpected, unforeseen, or mistaken. The court found Distinctive's refusal to return the seized equipment was "significant" in determining that it acted intentionally.

¶ 31    The court rejected Distinctive's argument that the claims fell within the policies' coverage because RyKrisp raised a claim for gross negligence because those words appeared in the prayer for punitive damages, which were not insurable. The court found that gross negligence was not an element of either claim.

¶ 32    The court also found that both tortious interference claims in the Underlying Complaint were alleged to arise from multiple acts of intentional interference. The court found that the focus of the claims was on Mr. Harris' knowing and intentional interference with RyKrisp's contract rights with iBake and its legitimate expectation of doing business with iBake. The court found that any allegations of slanderous or libelous publications were not directed to the theories of recovery pled by RyKrisp, but were more akin to free-standing references that were not attached to any particular theory of recovery. The court determined that the references were meant to bolster the allegation that Mr. Harris acted with malice and intent to cause iBake to end its relationship with RyKrisp.

¶ 33 The court turned to the first exclusion under the policies, which excluded coverage for personal and advertising injury for publications made with knowledge that the act would violate the rights of another. The court found that the allegations in the Underlying Complaint sufficiently alleged that Mr. Harris acted and spoke with knowledge that his acts would violate the rights of another. The court therefore found that this first exclusion applied to bar coverage in this case.

¶ 34 With regard to the second exclusion, however, which excluded coverage for personal advertising injury that arises out of oral or written publication of material with knowledge of its falsity, the court found that there were no allegations of falsity in RyKrisp's complaint. The court noted that there was distinction between falsities and disparagement and found that this exclusion did not apply in this case.

¶ 35 Nonetheless, based on its previous findings, the court found that State Auto did not have a duty to defend or indemnify Distinctive in the Underlying Litigation. The court determined that there existed a *bona fide* dispute as to coverage and found that State Auto did not act in bad faith in denying coverage. The court therefore granted summary judgment on two of the counts in State Auto's complaint and on all of the counts in Distinctive's counterclaim.

¶ 36 Distinctive filed a motion to reconsider in which it contended that State Auto should be estopped from contesting coverage in this case because State Auto breached its obligations by delaying and cancelling settlement negotiations. Distinctive maintained that State Auto put its own interests ahead of Distinctive's by encouraging Distinctive to enter into settlement negotiations with RyKrisp, but then delaying and refusing to participate in those negotiations. The court denied the motion.

¶ 37 The court subsequently entered an order reflecting that the parties had reached a settlement agreement on the remaining counts. The court found that its ruling granting the motion for a partial

summary judgment was now a final and appealable judgment and there was no just reason to delay enforcement or appeal of that ruling. Less than 30 days later, Distinctive filed its notice of appeal from the circuit court's judgment. We find that we have jurisdiction to consider the merits of this appeal pursuant to Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303(a) (eff. July 1, 2017).

¶ 38                                    II. ANALYSIS

¶ 39    On appeal, Distinctive contends that the circuit court erred when it refused to consider evidence from the Underlying Litigation outside of RyKrisp's complaint in determining whether coverage existed under the policies. Distinctive also asserts that the court erred in finding that Coverage A did not provide coverage for the detinue and conversion claims and that Coverage B did not provide coverage for the tortious interference claims. Distinctive maintains that the court erred in finding that the exclusion for knowingly violating the rights of another applied to preclude coverage. Finally, Distinctive contends that the court erred in rejecting its claim for bad faith denial of coverage.

¶ 40                              A. Standard of Review

¶ 41    Summary judgment is proper where the pleadings, depositions, admissions, and affidavits on file, when viewed in a light most favorable to the nonmoving party, reveal that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *General Casualty Insurance Co. v. Lacey*, 199 Ill. 2d 281, 284 (2002) (citing 735 ILCS 5/2-1005(c) (West 2000)). "In determining whether a genuine issue as to any material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent." *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 518 (1993). "A triable issue precluding summary judgment exists where the material facts are disputed,

or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts." *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). We review the trial court's grant of summary judgment *de novo*. *Lacey*, 199 Ill. 2d at 284.

¶ 42    Likewise, the interpretation of an insurance policy is a legal question, which we review *de novo*. *Lee v. State Farm Fire & Casualty Company*, 2022 IL App (1st) 210105, ¶ 15. "Because an insurance policy is a contract, the rules applicable to contract interpretation govern the interpretation of an insurance policy." *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 433 (2010). Therefore, our primary objective is to ascertain and give effect to the intention of the parties, as expressed in the policy language. *Hobbs v. Hartford Insurance Company of the Midwest*, 214 Ill. 2d 11, 17 (2005). "If the policy language is unambiguous, the policy will be applied as written, unless it contravenes public policy." *Id.* We will find that policy language is ambiguous only where the language is susceptible to more than one reasonable interpretation. *Munoz*, 237 Ill. 2d at 433. "Although policy terms that limit an insurer's liability will be liberally construed in favor of coverage, this rule of construction only comes into play when the policy is ambiguous." *Hobbs*, 214 Ill. 2d at 17.

¶ 43                                B. True But Unpleaded Facts

¶ 44    Distinctive first asserts that the circuit court erred in refusing to consider facts from the Underlying Litigation outside of the allegations in RyKrisp's complaint in determining whether State Auto had a duty to defend. Specifically, Distinctive contends that the trial court should have considered Mr. Harris' trial testimony and the allegations in Distinctive's counterclaim, which demonstrated that it mistakenly believed that it had the right to withhold RyKrisp's equipment and did not do so with the intention of violating RyKrisp's legal rights. Distinctive also asserts that the court should have considered correspondences between Distinctive and State Auto during the

Underlying Litigation. Distinctive maintains that this information was known to State Auto at the time it was making its coverage determination and the court should have considered it in determining whether coverage existed.

¶ 45    In determining whether an insurer has a duty to defend its insured, a court must look to the allegations in the underlying complaint. *American Economy Insurance Co. v. DePaul University*, 383 Ill. App. 3d 172, 177 (2008). "It is the allegations of the complaint, not the findings of the underlying litigation, that are dispositive of the duty to defend." (Internal quotation marks omitted.) *Pekin Insurance Co. v. McKeown Classic Homes, Inc.*, 2020 IL App (2d) 190631, ¶ 19. The court then compares the allegations in the complaint to provisions in the insurance policy to determine whether the facts alleged in the complaint potentially fall within coverage. *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 363 (2006). This analysis is referred to as the "eight corners" analysis; that is, the four corners of the complaint are compared to the four corners of the insurance policy without reference to extrinsic evidence. *Pekin Insurance Co. v. St. Paul Lutheran Church*, 2016 IL App (4th) 150966, ¶ 63.

¶ 46    In some circumstances, however, courts may consider evidence beyond the underlying complaint in determining the duty to defend. *American Economy*, 383 Ill. App. 3d at 179. In such cases, even though the complaint, standing alone, may not adequately allege an occurrence potentially within the policy's coverage, an insurer is nonetheless obligated to defend the insured "if the insurer has knowledge of *true but unpleaded facts*, which, when taken together with the complaint's allegations, indicate that the claim is within or potentially within the policy's coverage." (Emphasis added.) *Associated Indemnity Co. v. Insurance Company of North America*, 68 Ill. App. 3d 807, 816 (1979).

¶ 47    Distinctive asserts that its counsel routinely communicated with State Auto during the pendency of Underlying Litigation and that State Auto was aware of Mr. Harris' testimony and Distinctive's position that it believed it had the legal right to withhold RyKrisp's equipment at the time State Auto made its coverage determination. Distinctive maintains that the court therefore should have considered these facts known to State Auto in determining whether coverage existed instead of limiting its review to the allegations in RyKrisp's complaint.

¶ 48    In support of this contention, Distinctive primarily relies on the supreme court's ruling in *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446 (2010). In *Wilson*, the plaintiff in the underlying action brought suit against the insured alleging claims for assault, battery, and intentional infliction of emotional distress. *Wilson*, 237 Ill. 2d at 450. The insured filed a counterclaim in which he alleged that he acted in self-defense. *Id.* at 451. The policy at issue had an exclusion for intentional acts, but that exclusion was subject to a self-defense exception. *Id.* The insurer, Pekin Insurance Company (Pekin), filed a declaratory judgment action seeking a declaration that it did not owe the insured a duty to defend in the underlying litigation because the allegations in the underlying complaint were not covered by the insurance policy. *Id.* at 451-52. After reviewing the allegations in the underlying complaint, the circuit court granted Pekin's motion for a judgment on the pleadings. *Id.* at 453.

¶ 49    This court reversed, finding that the circuit court should have considered the allegations raised in the insured's counterclaim in the underlying litigation, which would have triggered the self-defense exception in the policy. *Id.* at 454. The supreme court agreed, finding that in certain circumstances, the circuit court may look beyond the underlying complaint in determining an insurer's duty to defend. *Id.* at 459, 463. The supreme court found that because the insurer sought a judgment on the pleadings, the circuit court should have considered the allegations in the

insured's counterclaim in the underlying action because the counterclaim was "part of the pleadings in the underlying lawsuit for which Pekin asked the court's determination of its duty to defend and provide coverage." *Id.* at 463.

¶ 50    The supreme court determined that the " 'unusual or compelling circumstances' " of the case required the trial court to look beyond the allegations in the complaint. *Id.* at 465. The court noted that it was " 'unlikely' " that the underlying complaint would set forth allegations supporting the basis for insured's self-defense claim. *Id.* The court determined that unless the insured in the underlying lawsuit was allowed to plead facts alleging that the plaintiff's injury occurred through the insured's reasonable use of self-defense, there would be no way for the self-defense exception to be triggered, rending the coverage "illusory." *Id.* at 465-66.

¶ 51    Distinctive contends that, like in *Wilson*, its belief that it was authorized to withhold RyKrisp's equipment could only derive from Distinctive. As an initial matter, *Wilson* does not address the court's ability to consider testimony from the insured or its representative in the underlying suit in determining the duty to defend. Instead, its holding is limited solely to pleadings. Indeed, Distinctive does not identify any authority, and our research reveals none, that would permit the circuit court to consider trial testimony as "true but unpleaded facts" as an exception to the general rule that the duty to defend is based on the allegations in the underlying complaint. See *Indiana Insurance Co. v. Philadelphia Indemnity Insurance Co.*, 2013 WL 1289058, ¶ 68 (finding that the court could not consider a police report as true but unpleaded facts under *Wilson* because *Wilson* permitted a court to look only to other court pleadings in determining whether the insurer owed the insured a duty to defend). We find the same reasoning applies with regard to the various correspondences that Distinctive maintains that it sent to State Auto during the pendency of the Underlying Litigation. We therefore find no error based on the circuit court's refusal to consider

Mr. Harris' testimony and other non-pleadings from the Underlying Litigation in determining whether there was a duty to defend.

¶ 52     Distinctive also asserts, without reference to any particular paragraph, that the circuit court should have considered the allegations in its counterclaim in the Underlying Litigation in determining the duty to defend. Even assuming Distinctive's counterclaim in the Underlying Litigation alleged a mistaken belief that it was entitled to seize and withhold the equipment[1], these self-serving allegations are not the type of "facts" intended to be covered by the true but unpleaded facts doctrine. *Maryland Casualty Co. v. Dough Management Co.*, 2015 IL App (1st) 141520, ¶ 59 ("true but unpleaded facts typically do not include those facts where the insurer has no way of knowing whether the facts are true unless it conducts an independent investigation."). Instead, the true but unpleaded facts doctrine is typically applied in cases where "the extraneous facts possessed by the insurer and known to be true were facts the insurer discovered during its own investigation of the underlying action." *Shriver v. Shriver Insurance Agency v. Utica Mutual Insurance Co.*, 323 Ill. App. 3d 243, 251 (2001). "*Shriver* teaches that unpleaded facts that the insured gives the insurer should be viewed with suspicion when determining the duty to defend, because the insurer has no way of knowing whether the facts are true without conducting its own investigation or otherwise verifying the information independently." *Pekin Insurance Co. v. Precision Dose, Inc.*, 2012 IL App (2d) 110195, ¶ 44. Distinctive has not directed us to any part of the record showing that it informed State Auto of its mistaken belief that it was entitled to possess the equipment before State

---

[1] Distinctive alleged in its affirmative defenses that any failure to return the equipment was "excused" because Distinctive had a possessory lien on the equipment as described in its counterclaim. In its counterclaim, Distinctive alleged that the equipment provided by RyKrisp arrived at Distinctive's manufacturing facility in unusable condition. At RyKrisp's request, and in reliance on RyKrisp's promise to pay for its services, Distinctive cleaned and restored the equipment. Distinctive alleged that it had been damaged by RyKrisp's unauthorized removal of the equipment.

Auto filed this declaratory judgment action or that State Auto investigated whether these allegations were true. *Id.* In sum, the " 'exception for true but unpleaded facts was not meant to be applied to situations where the only extraneous facts are supplied by the insured.' " *American Economy*, 383 Ill. App. 3d at 180 (quoting *Lexmark International, Inc. v. Transportation Insurance Co.*, 327 Ill. App. 3d 128, 136 (2001)).

¶ 53 The distinction between the circumstances in this case and those present in *Wilson*, which the supreme court acknowledged were " 'unusual or compelling,' " is that the policy in that case contained both an exclusion for intentional acts and a specific self-defense exception to that exclusion. That exception could be triggered only where the insured pled self-defense in response to a claim based on the insured's allegedly intentional act. In a judgment on the pleadings, the court could determine whether the exception was triggered only by reference to the pleadings. In this case, no parallel exception-to-the-exclusion exists for the claims for detinue and conversion. Instead, whether those claims fell within the policies' coverage could be determined solely by reference to the allegations in the underlying complaint. Moreover, this court has recognized that Wilson *permits* a court to consider material outside of the underlying complaint, but it does not *require* that it do so. *Precision Dose*, 2012 IL App (2d) 110195, ¶ 41.

¶ 54 Finally, before the circuit court, Distinctive also pointed to allegations in its counterclaim to State Auto's declaratory judgment complaint, which summarized Mr. Harris' testimony from the trial and asserted that the "reasonable inference the jury drew from Mr. Harris' testimony was that he mistakenly believed Distinctive was entitled to retain [RyKrisp's] property so that Distinctive was not engaging in a knowing and intentional conversion of property without a legal right to the property, but that Distinctive had instead negligently converted RyKrisp's property." These "explanatory allegations," raised for the first time in the declaratory judgment action, may

not be considered in determining State Auto's duty to defend. *McKeown*, 2020 IL App (2d) 190631, ¶ 31. Accordingly, we find that the circuit court did not err in refusing to consider pleadings and testimony outside of RyKrisp's complaint in determining whether State Auto had a duty to defend.

¶ 55                    C. Coverage A: Detinue and Conversion

¶ 56    Distinctive next contends that the court erred in finding that the policies did not provide coverage for RyKrisp's claims for detinue and conversion under Coverage A's Property Damage Provision. Distinctive asserts that both detinue and conversion claims alleged the wrongful possession or exclusive control over RyKrisp's property. Distinctive maintains that the circuit court improperly limited the definition of an occurrence to an "accident," and erred in refusing to consider whether Distinctive "intended" the injury to RyKrisp.

¶ 57    In order to determine whether the policies provided coverage under Coverage A, we will compare the allegations in RyKrisp's complaint to the policies' terms. In its complaint, RyKrisp alleged that Distinctive seized RyKrips's equipment from the RyKrisp warehouse and transported it to Distinctive's manufacturing facility. RyKrisp alleged that Distinctive had no ownership right to the equipment and refused RyKrisp's demand to return the equipment.

¶ 58    Under Coverage A, State Auto would be obligated to defend Distinctive in a suit to recover for "property damages" caused by an "occurrence." Property damages include physical injury to tangible property that results in a loss of use of that property and the loss of use of tangible property that is not physically injured. An occurrence is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

¶ 59    Distinctive maintains that the detinue and conversion claims fall within Coverage A because RyKrisp alleged that Distinctive wrongfully possessed the property causing it loss of use.

State Auto maintains, however, and the circuit court found, that there was no coverage under Coverage A because any alleged property damage was not caused by an "occurrence." The key point of contention is the definition of an "accident" as used in the definition of "occurrence" in the policies. State Auto maintains that the injury Distinctive caused RyKrisp in the Underlying Litigation was not accidental because Distinctive intentionally took the property and refused to return it, knowing and intending that such actions would cause harm. Distinctive responds that the proper inquiry is whether the *injury* was expected or intended by the insured's actions, regardless of whether the insured acted intentionally. Distinctive maintains that it did not intend to cause any injury to RyKrisp because it believed that it was entitled to seize and withhold the equipment.

¶ 60    The use of the word "occurrence" in insurance policies is intended to broaden coverage because it eliminates the need to find an exact cause of damage as long as they are neither intended or expected by the insured, but the occurrence must still be "accidental." *McKeown*, 2020 IL App (2d) 190631, ¶ 37 (citing *Rock v. State Farm Fire & Casualty Co.,* 395 Ill. App. 3d 145, 149 (2009)). An "accident" is "an unforeseen occurrence, usually of an untoward or disastrous character or an undesigned sudden or unexpected event of an inflictive or unfortunate character." (Internal quotation marks omitted.) *Id.* (quoting *Rock*, 395 Ill. App. 3d at 149). " 'The natural and ordinary consequences of an act do not constitute an accident.' " *Id.* (quoting *West Bend Mutual Insurance Co. v. People*, 401 Ill. App. 3d 857, 865 (2010)). We find this court's decision in *McKeown* instructive on the issue of whether Distinctive's conduct was accidental.

¶ 61    In *McKeown*, the plaintiff in the underlying action filed a claim against the insured, McKwoen Classic Homes, Inc., and Jerome McKeown (collectively, McKeown) alleging breach of contract and conversion stemming from McKeown's work on the plaintiff's property. *McKeown*, 2020 IL App (2d) 190631, ¶ 3. The conversion claim alleged that McKeown took

property from the construction site without the plaintiff's consent. *Id.* The plaintiffs demanded that McKeown return the property, but McKeown refused to do so. *Id.* The plaintiffs alleged that McKeown's acts were " 'willful, wanton, malicious, and oppressive and were undertaken with the intent to defraud' and that they 'justify the awarding of punitive damages.' " *Id.*

¶ 62    The insurance company, Pekin Insurance Company (Pekin), filed a declaratory judgment action alleging that it had no duty to defend McKeown based on policy language substantially similar to the case at bar. *Id.* ¶¶ 4-5. The policy provided that Pekin would be obligated to defend McKeown in a suit for "bodily injury" or "property damage" where the bodily injury" or "property damage" was " 'caused by an occurrence that takes place in the coverage territory.' " *Id.* ¶ 5. Like the insurance policies in this case, the policy in *McKeown* defined an occurrence as " 'an accident, including continuous or repeated exposure to substantially the same general or harmful conditions.' " *Id.* ¶ 5. McKeown filed a counterclaim to Pekin's complaint for declaratory judgment, in which it contended, *inter alia*, that the " 'materials at issue were mistakenly removed by a subcontractor ***." *Id.* ¶ 6. McKeown claimed that the loss was covered as an " 'occurrence' " because the subcontractor's mistake in removing property that belonged to the underlying plaintiffs was an " 'accident.' " *Id.* The circuit court granted Pekin's motion for summary judgment finding that the underlying plaintiffs alleged that McKeown acted intentionally and that once the conduct was brought to McKeown's attention, they refused to return the property. *Id.* ¶ 11. The court continued that there was nothing in the allegations of the underlying complaint that indicated that McKeown's actions were "negligence or an accident." *Id.*

¶ 63    In affirming the circuit court's judgment, this court first noted that McKeown's assertion that the subcontractor mistakenly removed the property appeared for the first time in the declaratory judgment action. *Id.* ¶ 25. Accordingly, the court found that it could not rely on this

contention in determining whether Pekin had a duty to defend, and could look only to the allegations in the underlying complaint. *Id.* ¶ 31. Nonetheless, McKeown alleged that the trial court erroneously inferred from the allegations in the underlying complaint that McKeown intended to injure the plaintiffs. *Id.* ¶ 32. McKeown pointed out that the complaint did not allege that it acted with knowledge of a lack of authorization. *Id.*

¶ 64    Looking to the underlying complaint, this court noted that the plaintiffs' alleged that McKeown "refused" to return the property. *Id.* ¶¶ 35-36. The court also noted that the plaintiff's described McKeown's actions as " 'willful, wanton, malicious, and oppressive, and undertaken with the intent to defraud.' " *Id.* ¶ 36. The court found that these allegations unambiguously alleged an intentional tort of conversion and did not allege that the conversion was a "mistake." *Id.* The *McKeown* court concluded that no accident or occurrence occurred in this case to trigger Pekin's duty to defend where the underlying plaintiffs clearly and unambiguously alleged intentional conduct by McKeown. *Id.* ¶ 38.

¶ 65    Here, like the underlying plaintiffs in *McKeown*, RyKrisp alleged in its conversion and detinue counts that Distinctive "wrongfully and without authorization" assumed control over the equipment and "refused" RyKrisp's demands to return the equipment. These allegations do not allege a "mistake," but unambiguously allege the intentional torts of detinue and conversion. Distinctive asserts that we should distinguish *McKeown* because the insurer in that case was not aware of McKeown's claim that it mistakenly took the property until the declaratory judgment action. Distinctive contends that, in contrast, State Auto was aware of the possibility that Distinctive negligently converted the equipment during the underlying litigation. This argument, however, is based on this court's acceptance of Distinctive's "true but unpleaded facts" from the Underlying Litigation, which this court has already found should not be considered in determining

whether State Auto had the duty to defend. The operative consideration is RyKrisp's allegations in the complaint, which alleged intentional conduct, and that the property damage RyKrisp suffered was the expected or intended result of that conduct. In short, the "natural and ordinary consequences" of Distinctive's seizure and withholding of the equipment was that RyKrisp would be unlawfully deprived of the property, giving rise to claims for detinue and conversion.

¶ 66     Distinctive also attempts to distinguish *McKeown* on the basis that RyKrisp alleged in its complaint that Distinctive acted with "gross negligence," and the underlying plaintiffs in *McKeown* did not allege negligence. However, a review of RyKrisp's complaint shows that the allegation of "gross negligence" appeared in RyKrisp's demand for punitive damages. In its complaint, RyKrisp alleged Distinctive " willfully seized the Equipment with fraud, actual malice, or with such *gross negligence* as to indicate a wanton disregard of the rights of others. Accordingly, Plaintiff is entitled to recover punitive damages against Defendant." (Emphasis added.) Illinois courts have established a public policy that "prohibits insurance against liability for punitive damages resulting from the insured's own misconduct." *Warren v. Lemay*, 144 Ill. App. 3d 107, 116 (1986) (citing *Beaver v. Country Mutual Insurance Co.*, 95 Ill. App. 3d 1122, 1125 (1981)).

¶ 67     Public policy considerations aside, this bare allegation of "gross negligence" is insufficient to trigger coverage. As this court explained in *Country Mutual Insurance Co. v. Dahms*, 2016 IL App (1st) 141392, ¶ 47, the substance of the complaint will control over the form, and "[e]ven where a complaint alleges an act is 'negligent,' if the allegations show that what is truly alleged can only be characterized as an intentional act, the substance will control over the moniker placed on it by a plaintiff." This principle recognizes the reality that plaintiffs may have an incentive to artfully craft their pleadings in a way that triggers the defendant's insurance coverage. *Id.* As discussed above, the allegations in RyKrisp's complaint do not allege anything other than

intentional conduct by Distinctive. Both detinue and conversion are intentional torts, and negligence is not an element of either tort. Thus, this single mention of "gross negligence" in the prayer for punitive damages is not sufficient to trigger the duty to defend.

¶ 68　　Finally, we find Distinctive's reliance on *Insurance Corporation of Hanover v. Shelborne Associates*, 389 Ill. App. 3d 795 (2009) and *Dahms*, 2016 IL App (1st) 141392, unpersuasive. In *Shelborne*, the underlying plaintiffs alleged that that the insured sent unsolicited facsimile communications and converted the plaintiffs' property, including their paper and toner. *Shelborne*, 389 Ill. App. 3d at 795-96. The circuit court found that the insurance company owed a duty to defend, finding, *inter alia*, that the underlying complaint did not conclusively state that the insured's actions in sending the unauthorized faxes were "willful" or "knowing." *Id.* at 798. This court agreed, noting that the underlying complaint alleged that the insured " 'knew or should have known' " that its actions in sending the unauthorized faxes was wrongful and without authorization. *Id.* at 803. The court found that this framing raised the possibility of either intentional or negligent conduct. *Id.* Under these circumstances, the court found that the allegations in the underlying complaint set forth sufficient facts to potentially bring the underlying lawsuit within coverage of the insured's policy. *Id.*

¶ 69　　In this case, RyKrisp did not allege that Distinctive "knew or should have known" that its taking of the equipment was unlawful. Rather, RyKrisp alleged that Distinctive acted without legal authority and refused to return the equipment when asked. These allegations speak only to intentional conduct, and do not raise the possibility of negligent conduct.

¶ 70　　Similarly, in *Dahms*, 2016 IL App (1st) 141392, ¶ 1 the insured, Charles Dahms, sought coverage from his insurance company, Country Mutual Insurance Company (Country Mutual), after he was named as a defendant in a tort lawsuit. In the underlying tort lawsuit, the plaintiff

pleaded causes of action for negligence and battery after Dahms allegedly used his briefcase to make contact with the plaintiff's taxicab. *Id.* ¶ 8. The plaintiff pursued Dahms on foot and Dahms struck the plaintiff with his briefcase. *Id.* Both the negligence count and the battery count in the underlying complaint alleged the same basic facts. *Id.* ¶¶ 10-11. Dahms sought coverage under his homeowner's insurance policy with Country Mutual. *Id.* ¶ 13. Country Mutual denied his claim because the allegations did not constitute an "occurrence" under the policy, and, even if they did, the policy contained an exclusion for "intentional acts." *Id.* Country Mutual then filed a declaratory judgment action asserting that it had no duty to defend Dahms in the underlying tort litigation. *Id.* ¶ 16. The circuit court found that Country Mutual was obligated to pay for Dahms' defense, but this obligation was limited to the period after Dahms filed his answer and affirmative defenses and for the first time asserted self-defense. *Id.* ¶ 26.

¶ 71    On appeal, Country Mutual contended that the allegations in the underlying complaint did not trigger coverage because the complaint did not allege an "occurrence." *Id.* ¶ 32. An occurrence was defined in the policy as an "accident." *Id.* ¶ 28. After reviewing the allegations in the underlying complaint, this court found that the "sparse" allegations did not conclusively establish that Dahms acted intentionally. *Id.* ¶ 56. The court found that it was not clear from the complaint how Dahms came to strike the plaintiff with his briefcase, noting that the "allegations could describe a scuffle in which any striking of [the plaintiff] could have been less than a deliberate, intentional act. It could describe a struggle over the briefcase itself." *Id.* This court determined that therefore the claim could potentially fall within coverage because there could be a situation where Dahms acted recklessly, or, as alleged in the complaint, negligently. *Id.* ¶¶ 56-57.

¶ 72    Here, unlike the plaintiff in *Dahms*, RyKrisp did not allege a count for negligence. RyKrisp's complaint alleged that Distinctive personnel, at the direction of Mr. Harris, entered

RyKrisp's warehouse, seized the equipment, transported it to Distinctive's manufacturing facility, and refused to return it when asked. There is no ambiguity in RyKrisp's complaint like in the complaint in *Dahms* where RyKrisp alleged only intentional conduct. As discussed, the allegation of gross negligence was solely in relation to RyKrisp's claim for punitive damages. RyKrisp did not allege that Distinctive acted negligently in seizing and withholding the equipment. Accordingly, we find the circuit court did not err when it found that coverage did not exist under Coverage A for the claims of detinue and conversion.

¶ 73                    D. Coverage B: Tortious Interference

¶ 74    Distinctive next contends that the circuit court erred when it found that the policies did not provide coverage for RyKrisp's claims for tortious interference under the personal and advertising injury provisions of Coverage B. Distinctive maintains that RyKrisp alleged that Distinctive deliberately disparaged RyKrisp, which deterred iBake from keeping its agreement with RyKrisp. Distinctive asserts that these allegations therefore constitute an injury arising out of an oral or written publication that disparaged RyKrisp and triggered State Auto's duty to defend under Coverage B.

¶ 75    In its counts for tortious interference with contract and tortious interference with business expectancy, RyKrisp alleged it entered into a contract with iBake to manufacture RyKrisp brand crackers. After learning of the agreement, Mr. Harris contacted iBake and told them not to manufacture RyKrisp crackers "without justification and out of spite for RyKrisp." During that conversation, Mr. Harris "deliberately disparaged RyKrisp and/or RyKrisp personnel and their involvement in manufacturing" RyKrisp crackers. Mr. Harris then caused his attorneys to send a cease and desist letter to iBake. The cease and desist letter informed iBake about Distinctive's confidentiality agreement with RyKrisp, and cautioned iBake against using of Distinctive's

proprietary information in manufacturing RyKrisp brand crackers. RyKrisp alleged that Mr. Harris contacted iBake and sent the cease and desist letter to interfere with RyKrisp's agreement with iBake. As result of the conversation and the letter, iBake terminated its agreement with RyKrisp.

¶ 76     Coverage B provides that State Auto will be obligated to defend Distinctive in a suit seeking damages because of personal and advertising injury. Personal and advertising injury is defined as injury arising out of "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or *disparages* a person's or organization's goods, products, or services." (Emphasis added.) Distinctive maintains that coverage exists in this case because RyKrisp's personal and advertising injury arose out of Mr. Harris' disparaging comments to iBake about RyKrisp.

¶ 77     In finding that State Auto did not have a duty to defend in this case despite the allegation of disparagement in the complaint, the circuit court relied on the Third District of this court's decision in *ISMIE Mutual Insurance Co v. Michaelis Jackson & Associates, LLC*, 397 Ill. App. 3d 964 (2009) and this court's decision in *Westfield Insurance Co. v. West Van Buren, LLC*, 2016 IL App (1st) 140862. These cases stand for the proposition that if a factual allegation from the complaint is not directed to a theory of recovery, it does not factor into the coverage determination.

¶ 78     In *ISMIE*, former employees of the insured physician and medical group filed a *qui tam* suit against the insured alleging that the insured had submitted false Medicare claims for reimbursement and performed numerous medically unnecessary procedures. *ISMIE*, 397 Ill. App. 3d at 965. The insured's medical malpractice insurance covered claims involving "personal injury" caused by "professional services." *Id.* at 967. The insured physician argued that the allegations in the *qui tam* suit triggered the insurance company's duty to defend because the underlying unnecessary medical procedures constituted personal injuries. *Id.* at 968-69. The *ISMIE* court

rejected that argument finding that "[t]he fact that the insurer might have to defend a medical malpractice claim stemming from a claim subject to the false claim allegations does not require a finding that the same insurer is required to defend the *qui tam* case tied to the false claim allegations." *Id.* at 972. The *ISMIE* court noted "that the proof required to sustain a claim for personal injuries, like a medical malpractice claim, is clearly distinct from the proof required for a claim for false filings of claims for medical reimbursement." *Id.*

¶ 79    Thus, in *ISMIE*, although the allegations in the underlying complaint made reference to personal injuries suffered by patients, the former employees who brought the *qui tam* action were not seeking damages based on those personal injuries, and, indeed, as the *ISMIE* court noted, lacked standing to do so. *Id.*

¶ 80    Similarly, in *Westfield*, a condominium developer subcontracted installation of the roof for a condominium development. *Westfield*, 2016 IL App (1st) 140862, ¶ 3. The subcontractor obtained a general liability policy through Westfield Insurance Company (Westfield Insurance), which offered coverage for "occurrences" and "property damage." *Id.* the policy listed the developer as an additional insured. *Id.*

¶ 81    Shortly after construction was completed, the condominium association claimed that construction defects in the roof caused water to leak into the building, causing damage to the individual condominium units. *Id.* ¶ 4. The association brought suit against the developer and the subcontractor raising numerous claims, including that the developer intentionally failed to disclose the defects in the roofing system. *Id.* ¶ 6. The complaint also alleged that "individual unit owners experienced damage to personal and other property as a result of the water infiltration." *Id.* The circuit court granted Westfield Insurance's motion for summary judgment, finding no duty to defend. *Id.* ¶ 9.

¶ 82　In affirming the summary judgment and finding no duty to defend, the *Westfield* court rejected the developer's argument that the complaint triggered a duty to defend because the complaint alleged physical harm to personal property. *Id.* ¶ 20. The court found that the allegations of property damage were "simply meant to bolster the contention that water infiltration generally occurred and caused damages," but did not trigger coverage under the policy. *Id.* The court noted that the complaint did not seek damages for any personal property damage and the individual condominium unit owners were not added to the suit as parties. *Id.* The court concluded that: "We do not believe a free-standing reference to a fact, that is not attached to any particular theory of recovery, can trigger a duty to defend." *Id.*

¶ 83　*ISMIE* and *Westfield* instruct us that in determining the duty to defend, the court must look to the theories of recovery in the complaint and the allegations necessary to support that recovery. If the underlying plaintiff makes a free-standing reference to fact merely intended to bolster the factual allegations, such as the fact that patients suffered personal injury in *ISMIE* or that the condominium unit owners suffered personal property damage in *Westfield*, that free-standing fact cannot trigger the duty to defend if it is not attached to a particular theory of recovery.

¶ 84　In this case, in order to succeed on its claim for tortious interference with contract, RyKrisp was required to prove: "(1) the existence of a valid and enforceable contract between the plaintiff and a third party, (2) that defendant was aware of the contract, (3) that defendant intentionally and unjustifiably induced a breach of the contract, (4) that the wrongful conduct of defendant caused a subsequent breach of the contract by the third party, and (5) that plaintiff was damaged as a result." (Internal quotation marks omitted.) *Bank Financial, FSB v. Brandwein*, 2015 IL App (1st) 143956, ¶ 43 (quoting *Poulos v. Lutheran Social Services of Illinois, Inc.*, 312 Ill. App. 3d 731, 742 (2000)). Similarly, in order to prevail on its claim for tortious interference with business

expectancy, RyKrisp was required to prove: "(1) a reasonable expectancy of entering into a valid business relationship; (2) the defendant's knowledge of the expectancy; (3) the defendant's intentional and unjustified interference that prevents the realization of the business expectancy; and (4) damages resulting from the interference." *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 384 Ill. App. 3d 849, 862 (2008).

¶ 85    Thus, RyKrisp was not required to prove that Distinctive disparaged it in order to succeed on either of these claims. The allegation of disparagement was therefore not attached to any particular theory of recovery. RyKrisp did not allege it suffered injury because of the disparagement, but was injured because of Distinctive's "intentional and unjustifiable" interference with RyKrisp's business relationship with iBake. Distinctive maintains that the disparagement was the "crux" of RyKrisp's tortious interference claims, but this assertion is not supported by the allegations in the complaint. RyKrisp's claims were based on a conversation that Mr. Harris had with iBake and a cease and desist letter[2] that Distinctive sent to iBake. RyKrisp alleged that Mr. Harris and Distinctive's "intention" with these actions was to interfere with RyKrisp's business relationship with iBake, and that, as a result of this interference, iBake terminated its relationship with RyKrisp. RyKrisp did not seek relief based on the disparagement, but only for the intentional and unjustifiable interference. The allegation that Mr. Harris disparaged RyKrisp was intended only to bolster the allegation that Mr. Harris acted with intent, without justification, and "out of spite" in interfering with RyKrisp's business relationship with iBake. That the allegation of disparagement was not tied to any particular theory of recovery is further evidenced by the fact that the proof required to sustain a claim for personal and advertising injury

_____

[2]The cease and desist letter does not contain any "disparaging" comments and only informs iBake about a confidentiality agreement between Distinctive and RyKrisp.

caused by disparagement is clearly distinct from the proof required to sustain a claim for tortious interference with contract or business expectancy. *ISMIE*, 397 Ill. App. 3d at 972. Accordingly, we find that the circuit court did not err in finding the policies did not provide coverage for the tortious interference claims.

¶ 86                           E. Coverage B Exclusion

¶ 87    Distinctive next contends that the circuit court erred in finding that the exclusion for knowingly violating the rights of another applied to bar coverage for personal and advertising injury under Coverage B. Distinctive maintains that the circuit court erroneously inferred from RyKrisp's complaint that Mr. Harris knew his actions would violate RyKrisp's rights. Distinctive asserts that the complaint alleged that Distinctive and Mr. Harris knew the conversation and the cease and desist letter would interfere with Distinctive's agreement with iBake, but asserts that the "more reasonable" inference from these allegations was that Mr. Harris believed that he had the right to interfere with the contract because iBake and RyKrisp were using Distinctive's confidential information.

¶ 88    The "Knowing Violation Of Rights Of Another" exclusion in Coverage B will apply to bar coverage where the insured causes " 'personal and advertising injury' " "with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.' " Both parties and the circuit court focused on two paragraphs from RyKrisp's complaint in arguing that the exclusion does or does not apply. First, in paragraph 54 of the complaint, RyKrisp alleged that Mr. Harris "acted with malice in having the Conversation and causing the Cease and Desist Letter to be sent to [iBake] in order to interfere with the [iBake] Agreement without justification and out of spite for RyKrisp." Similarly, in paragraph 71 of the complaint, RyKrisp alleged that Mr. Harris "acted out of malice in having the Conversation and causing the Cease and Desist Letter

to be sent to [iBake] in order to interfere with the reasonable expectation that RyKrisp and [iBake] would enter into a valid business relationship without justification and out of spite for RyKrisp."

¶ 89    Distinctive maintains that these allegations address Mr. Harris' intention in interfering with the business relationship, but do not address his intention to "violate the rights of another." This argument, however, ignores the plain language of the complaint. RyKrisp did not simply allege that Mr. Harris intentionally interfered with the contract with iBake, but it alleged that Mr. Harris did so with "malice" and "out of spite." This implies Mr. Harris acted with the specific intention of causing harm to RyKrisp. This harm can only fairly be read as intentionally interfering with RyKrisp's agreement with iBake by intentionally violating its right to enter into the agreement. Indeed, as discussed above, RyKrisp could prevail on its claims for tortious interference only by proving that Distinctive was aware of the contract or business expectancy and that Distinctive "intentionally and unjustifiably" induced a breach of the contract or interfered with the expectancy. *Brandwein*, 2015 IL App (1st) 143956, ¶ 43; *Chicago's Pizza,* 384 Ill. App. 3d at 862. RyKrisp's allegation that Distinctive's actions were unjustifiable can only be interpreted to mean that Distinctive acted knowing that its actions would violate RyKrisp's rights. Accordingly, we find that the circuit court did not err in finding that this exclusion barred coverage under Coverage B for the claims of personal and advertising injury.

¶ 90                                  F. *Bona Fide* Dispute as to Coverage[3]

¶ 91    Finally, before the circuit court, Distinctive raised a claim for a bad faith denial of coverage pursuant to section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2020)). However, "section 155 cannot be invoked for an insurer's assertion of a legitimate policy defense or its denial

---

[3]Distinctive did not raise this issue in its opening brief, but State Auto addressed the issue in its appellee brief and Distinctive responded to State Auto's argument in its reply brief.

of coverage based on a policy's express wording." *Wells v. State Farm Fire and Casualty Co.*, 2020 IL App (1st) 190631, ¶ 32. "[W]here a *bona fide* dispute concerning coverage exists, costs and sanctions [under section 155] are inappropriate." *State Farm Mutual Automobile Insurance Co. v. Smith*, 197 Ill. 2d 369, 380 (2001). Accordingly, we find that section 155 sanctions are not appropriate in this case where there was a *bona fide* dispute as to coverage and State Auto did not act unreasonably or vexatiously. *Illinois Founders Insurance Co. v. Williams*, 2015 IL App (1st) 122481, ¶¶ 40-43.

¶ 92                                      III. CONCLUSION

¶ 93    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 94    Affirmed.